HOMER <i>against</i> MARTIN and GILMAN.

The interrogatories under a commission to examine witnesses, issued pursuant to the act, (*sess.* 36, *ch.* 56, *s.* 11, 1 R. L. 519, 20,) may be signed by counsel, without the addition of his character to the signature. It is enough that he is, in truth, a counsellor.

A judge of the C. P. of the degree of counsel in the supreme court, may direct as to the return of a commission, within the act, (*sess.* 45, *p.* 217, *s.* 2.) So the first judge of the C. P. of *New-York.*

Form of the direction.

A direction to return the commission by mail, directed to one of the clerks of the supreme court, is complied with, if the commission be delivered from the post office to the clerk, by any of the ordinary means, as by a messenger, the penny post, &c. Nor is it any objection that it be delivered by the attorney for one of the parties. The true question is, was it delivered to the clerk in an unaltered state. If the court be satisfied there has been no abuse, it may be received in evidence.

ASSUMPSIT, tried at the *New-York* circuit, *January* 20th, 1826, before EDWARDS, C. Judge.

At the trial, the plaintiff had no evidence to sustain his action except what was derivable from a commission issued in his behalf, and executed in the cause at the city of *Boston*. The direct interrogatories administered under this commission, were signed by the attorneys for the plaintiff, thus : " *Ward* and *Hoyt*, Atts. for Pltff." They were, in truth, at the time of signing, counsellors of this court ; but no addition to that effect was made to their signature. The interrogatories were allowed by the first judge of the C. P. of *New-York* by an endorsement thus : " allowed this 6th day of *May*, 1825, *Jno. T. Irving.*"

On the 6th of *May*, 1825, before the commission was sealed up, judge *Irving* endorsed the following order on the back thereof : " After this commission shall have been executed agreeably to the instructions annexed, let one of the commissioners put the sealed packet into the post office at *Boston*, stating on the back that the same

UTICA,
Aug. 1826.

Homer
v.
Martin

had been so put into said office by him, and signing his name to said endorsement. The packet, when sealed up by the commissioner, will be addressed to the clerk of the supreme court at the city of *New-York. May 6th*, 1825.
*John T. Irving.*"

It appeared by the post mark and certificate, that the packet was mailed at *Boston, June* 3d, 1825, and was endorsed by the deputy clerk of this court at *New-York*, on the 6th of the same *month,* " received and filed :" but that previous to so endorsing or filing the commission, the penny post had carried the packet to the deputy clerk at the office, who refused to pay the postage; wherefore the penny post took the packet down to the office of the plaintiff's attorneys to get the postage. They received the commission, and paid the postage. One of the plaintiff's attorneys then took the packet to the office of the defendants' attorney, who objected to the irregularity of its being in the plaintiff's attorneys' possession. He, the plaintiff's attorney, then took it to the clerk's office, where it was filed and endorsed.

The direction on the cover of the commission was thus :
" New-York, Supreme Court.

| | | |
|---|---|---|
| *Fitzhenry Homer* | } | |
| v. | } | Ward and Hoyt, |
| *Alexander Martin* and | } | Atts. for Pltff. |
| *Robert Gilman.* | } | |

To *James Farlie*, Esquire, clerk of the supreme court, *City Hall*, city of *New-York*."

It was also endorsed : " Put into the post office in the city of *Boston*, this 3d day of *June*, 1825, by *Josiah P. Cook*, commissioner."

The defendants' counsel objected, that the depositions taken under the commission should not be read; 1. Because of the irregular manner in which the return came to the clerk's office; but the judge overruled the objection. 2. Because Judge *Irving* had no authority to make the order as to the mode of return. This objection was also overruled. 3. That the direct interrogatories were not sign-

ed by counsel; whereupon proof was offered that *Ward* and *Hoyt* were in fact counsel, at the time of signing. The judge rejected this proof; and with it the commission and return; and the plaintiff was nonsuited.

*J. Hoyt*, for the plaintiff, now moved to set aside the nonsuit, and for a new trial. He cited the statutes, *sess*. 36, *ch*. 56, *s*. 11, 1 *R. L.* 519,20; *sess*. 45, *ch*. 217, *s*. 2, *p*. 226, to show the manner in which commissions may be executed and directed to be returned. The section last cited, he said, confides the direction to a commissioner of the court; and the statute, *sess*. 36, *ch*. 16, *s*. 1, 1 *R. L.* 322, authorizes the appointment of commissioners for *Oneida* and *Ontario*, declaring their powers, and conferring on them the same authority at chambers as a judge of this court possessed. Then came the statutes, *sess*. 41, *ch*. 195, *s*. 1, *p*. 173, and *sess*. 44, *ch*. 72, *p*. 64; the former extending the powers of commissioners to judges of the C. P. who are counsellors of this court; and the latter erecting the C. P. of *New-York*, requiring the first judge to be of the degree of counsel, and the 12th section restraining the application of the act, *sess*. 41, *ch*. 195, to the first judge of that court. The 3d section of the act, *sess*. 44, *ch*. 72, gives the same power to the C. P. as then belonged to the mayor's court of that city.

*Talcott*, (attorney general) contra. The statute, *sess*. 36, *ch*. 56, *s*. 11, directs the interrogatories to be signed by the party or his counsel. This statute being in derogation of the common law, must be strictly followed. (20 *John*. 361.) It is not enough that the person signing is in fact counsel. He should appear to be so on the face of the proceedings. They should speak their own regularity. This is always so in relation to the signature to special pleas; (*Dubois* v. *Dubois*, 5 *John*. *Rep*. 235, 6;) and *a fortiori*, as to interrogatories under a commission.

The order was to deliver the commission to the clerk. This court can make no new order. Suppose the penny post had delivered the commission to A, and he to B; and

it had thus passed round through half the city to the hands of the attorney ; it must be received, within the doctrine contended for on the other side. Is there any safety in such a practice ?

But the judge had no authority to make the order. The statute of 1818, (*sess.* 41, *ch.* 195, *s.* 1, ) did not mean to confer on the judges of the C. P. all the powers which might *thereafter* be given to commissioners appointed under the act of 1813, (*sess.* 36, *ch.* 16, *s.* 1.) The words of the act of 1818, are, " to do all the duties, and exercise all the powers which *are given* to such commissioners by any subsequent acts of the legislature;" not *which shall be* so given. The power conferred by the subsequent statute of 1822, (*sess.* 45, *ch.* 217, *s.* 2, *p.* 226,) is confined in terms to a judge of this court, or commisioner. There being no prospective words in the act of 1818, judges of the C. P. take no power under the statute of 1822. This construction is warranted by *Jones* v. *Reed*, (1 *John. Cas.* 20.) Judges being an inferior jurisdiction, can take nothing by implication. The statute (*sess.* 44, *ch.* 72,) confers no power on the first judge of the C. P. of the city of *New-York* to make this direction. Suppose his powers to be the same with those of the judges of the mayor's court under the statute relating to the mayor's court of *New-York*; (*sess.* 36, *ch.* 85, 2 *R. L.* 501 ;) no such power as is here exercised will be found there. But if it was conferred by that act, it is not adopted by the act organinzing the C. P. (*sess.* 44, *ch.* 72.) The 3d section of the last act refers merely to the power of the former mayor's court considered collectively ; and the 12th section is restrictive merely. The creation of a new court of C. P. will not give this power to its judges. The act of 1822 did not mean, that any common pleas judge, in any part of the state, of the degree of counsel, should have power to give these directions. It is even a greater power than this court itself possesses, who can only direct a return by mail. (*Sess.* 45, *ch.* 217, *s.* 1.) The consequences of the construction contended for should be looked to. (*Bac. Abr. statute* (I) *pl.* 10.)

*Hoyt*, in reply. Most likely the direction in this case was literally complied with : the clerk had the commission in his hands before he looked at the amount of postage. Neither the statute nor order, provides negatively that the commission shall not come to the hands of the attorney. The accident of its coming there is matter of regularity ; and the effect of this accident must be declared by the court upon their rules of practice. No one has been injured. It was not 5 minutes with the attorney. It was usual formerly to deliver the commission to the attorney in the first instance ; though not perhaps strictly justifiable within the act. (*Caines' Pract.* 426.) The commission being delivered back by the clerk to the penny post, he may be considered the agent of the clerk.

We submit to the examination of the court the various statutes on which the powers of judge *Irving* must rest. The practice has been to consider judges of the C. P. of the degree of counsel, commissioners within the act of 1822.

*Curia, per* WOODWORTH, J. The statute directs that the interrogatories be signed by the parties, or their counsel. They were signed by *Ward* and *Hoyt*, attorneys for the plaintiff ; and approved by the judge. Proof was offered that *Ward* and *Hoyt* were counsel. I think this sufficient. The fact that they were counsel was a compliance with the act ; although they were not described as such. The strictness applicable to special pleas was, I apprehend, never intended. This is evident from the statute allowing the party, as well as his counsel, to sign. No good reason can, in my view, be assigned, for rejecting the evidence, because the names were not followed by the addition of counsel.

The statute, (*sess.* 45, *ch.* 217, *s.* 1,) authorizes the judges to prescribe a return of the commission by mail, to be directed to one of the clerks of this court, and to be by him opened and filed in his office. This duty may be performed by a single judge. (*id. s.* 2.) The power was rightfully exercised by judge *Irving*, who has the power of a judge of this court in vacation.

There is no express provision as to the manner of conveying the commission from the post office to the clerk's office. I think it may safely be concluded, that the legislature were satisfied to leave the transmission from the one office to the other, to the usual course, and the vigilance and care the court would exercise when there was any suspicion of unfairness and fraud. The manner letters are taken from a post office was undoubtedly known.

Some times the person to whom the letters are addressed, calls and receives them. Perhaps more frequently they are sent for by a messenger. At other times, they may be delivered by a penny post. A delivery in either way is sufficient. It will not be pretended that the clerk must attend personally and receive the commission from the office. If that ground be abandoned, it follows that a delivery to any person is allowable.

The only question would seem to be, was the commission delivered to the clerk, in the same state as when received from the post office. The attorney of the party is not disqualified from being the medium of conveyance. If he has discharged the duty faithfully, the commission should be received ; and is no more objectionable on that ground, than if the penny post, or the clerk's messenger, had been the carrier. The commission has been opened by the clerk, and filed in the office. There is not a suggestion that it was opened by any other person. The non-suit must be set aside, and a new trial granted.

New trial granted.