*Court of Quarter Sessions, Dauphin County, May 14th, 1860.*

IN THE MATTER OF THE EXTENSION OF NORTH STREET.

When viewers are appointed to lay out a street under a private act of Assembly,
    and after the view, but before the report was confirmed, a new law was
    passed providing another mode for opening streets, the court cannot con-
    firm the report, and the proceedings must fall.

BY THE COURT.—A petition was filed on February 1st, 1860,
asking for the appointment of viewers for opening a street, "com-
mencing on the street or public road at a point at or near the
northeastern termination of North Street in the borough of
Harrisburg, and thence to the northeastern line of the borough
near George Sheeye's." Pursuant to the prayer of the petitioners,
twelve viewers were appointed in accordance with a special act
relating to said borough, who, on February 25th, proceeded to lay
out the street for public use, and made report to April Sessions
following. Their report was filed for confirmation April 23d ; and
on the 28th, exceptions to the report were filed by G. W. Harris.
The first exception relates to the point of commencement, which
was not on the public street or road near the termination of North
Street, but on a private road west of the public, from whence it
proceeded to cross the public street. The other exception is, that
this court has no power to act on the report, the law under which
it was made having been repealed before the same was presented
by the viewers, or acted on by the court. The report was con-
firmed *nisi,* and the width of the road fixed by the court two
days before the exceptions were filed. The regularity of the view
in regard to the place of commencement admits of grave ques-
tion ; but we forbear to decide that point, being of the opinion
that the other is fatal to the proceeding. On March 19th, 1860,
an act was passed incorporating the city of Harrisburg, the 33d
section of which created a special commission to lay out streets,
lanes, and alleys in the city, according to a general plan or sys-
tem, and conforming as nearly as practicable with the course and
width of the streets and alleys already in existence ; a plan of all
which is to be submitted to and approved by the Court of Quar-
ter Sessions, and the same to be opened from time to time accord-
ing to that plan. The last section of the law repeals all acts relat-
ing to the borough of Harrisburg inconsistent with the law thus
enacted. There is no saving in favor of proceedings then pend-
ing; but the aid of the 46th section is invoked by those in favor
of the report to show that the act of 1817, under which the view
was had, remains in full force. That section provides in sub-
stance that all acts of Assembly now in force touching or concern-
ing the borough of Harrisburg, and all laws and ordinances not
inconsistent with this act shall remain in force until the same

shall be re-enacted, repealed, altered, or supplied by other acts of
Assembly, or by-laws or ordinances enacted by the city.   In our
judgment the provisions of the city law is entirely inconsistent
with that relating to laying out streets in the borough.   It creates
a new tribunal for the purpose, and endeavors to establish a
scheme of uniformity between the new and old portions of the
city.   The two systems cannot stand together. ˙ It was manifestly
the design of the legislature to abolish the old and establish the
new.   The 46th section was mainly intended to preserve the ordi-
nances and by-laws of the borough until others should be en-
acted by the city authorities; but it also embraces such statutes as
are not in their provisions inconsistent with the city charter.   All
which are, cease to be obligatory.   What effect has the repeal of
the law on the preceding report?   It was not made by the
viewers until the law under which they acted was repealed, al-
though the statute was in full force when they viewed and located
the street.   The report had to be confirmed *nisi* by the Quarter
Sessions, the width to be fixed, and after laying over till August
Sessions could be confirmed absolutely.   In the meantime, those
opposed to the location had the right to demand a review.   Could
the court prove by review and re-review to locate the street after
the law had been repealed, merely because the proceeding had
been commenced during its existence?   To ask the question pre-
sents the obvious answer.   At what time then did our power
cease?   Most manifestly on the repeal of the law.   All was struck
dead *eo instanti* just where the repeal found it.   In North Canal
Street Road (10 W. 351) it is decided that "proceedings com-
menced under the provisions of a statute are arrested by the re-
peal of the statute; every act done towards their completion after
the repeal is void."   The facts of that case, when examined, will
be found much stronger in favor of the proceedings than in
this; as they had progressed nearer to completion.   In Abbott
*v.* The Commonwealth (8 W. 517), it is held that "the repeal of
a statute, pending a proceeding under it, puts an end to the fur-
ther prosecution of it, unless there be a saving clause in the re-
pealing act."   The same principle is settled in 4 Dall. 373; 1
Binn. 601; 1 Wash. C. C. R. 84.   A proceeding which was imper-
fect when the act of Assembly under which it was begun expires,
cannot be perfected afterwards.   What is done hereafter is void
(Stoever *v.* Immell, 1 W. 258).

It is established that where a remedy has been given by statute,
and procedings instituted under it, but during their pendency the
law was repealed, that the remedy was thereby taken away, and
further proceedings to enforce it were illegal (Commonwealth *v.*
Beatty, 1 W. 382).   It was decided in a road case that "no pro-
ceedings could be pursued under a repealed statute, though be-
gun before the repeal, unless by a special clause in the repealed

[In the matter of the Extension of North Street.]

act. Therefore, under the act of 6th April, 1802, repecting roads, proceedings under former laws, thereby repealed, cannot be continued (4 Y. 392). It was held that "proceedings under a repealed act cannot be completed after the repeal of the act; but they will be handed over to be finished under the new act" (Fenelon's Petition, 7 Barr, 173). To take that course with the proceedings under consideration is to throw it into the general mass of streets to be laid out by the commissioners. In Hampton v. The Commonwealth (1 H. 329), it is decided that "where the law requiring a street to be opened was repealed after the damages had been assessed, but before the opening, all proceedings to recover damages were void; the whole matter being ended by the repeal of the statute." It was held that proceedings commenced under an act which was repealed before their completion, are not revived by a repeal of the repealing act (Commonwealth v. Leech, 12 H. 55). The case which at first glance would appear most like supporting this proceeding is that of Uwchlan Township Road (6 C. 156); but when examined that case conforms to all the others cited. It is there held that the act of 28th April, 1857, changing the number of viewers in road cases in Chester and Lancaster counties did not affect cases pending. "Where the jurisdiction of any subject-matter depends upon a special act of Assembly, the proceeding falls of necessity if the law is repealed before it is terminated; but an act changing the mode of proceeding will not have that effect." Our case depends on a special act of Assembly relating to the borough of Harrisburg, varying in some essential particulars from the general law. The act which substitutes the commissioners instead of the viewers to lay out streets, etc., introduces a new system entirely inconsistent with the old; consequently, the latter must fall, as the latest expression of the legislative will is binding and must be our guide. Even if there was no repealing clause in this law, the inconsistency between the two systems would operate as a repeal without one (Johnstone's Estate, 9 C. 511). If it were a mere change in the number of viewers, I am satisfied that it would not end the proceedings, as in appointing viewers on any subsequent view we could conform to the new law. But the act of Assembly chartering the city creates a new system and entirely abolishes and takes away the jurisdiction of the sessions to appoint viewers.

The report falls for want of power in the court to confirm it.