## Commonwealth *against* DUANE.

*1809.*

GARRIGUES
*v.*
COXE.

*Tuesday,*
April 4th.

THE defendant was indicted for a libel of the late governor *M'Kean in his official capacity;* and at a nisi prius holden by *Yeates* J. in *December* last, was convicted upon one count. His counsel then moved in arrest of judgment, because although the indictment charged the libel to be *malicious,* scandalous, and seditious, it did not charge it to be *false,* which they held to be necessary under the constitution of this state. The motion was argued with great ability at *December* term; and a second argument was directed at this term, it being understood that the court was divided in opinion; but upon calling up the case, it was suggested that an act of assembly, recently passed, had put an end to the prosecution; and the court ordered an argument upon this previous point, before they should hear any further discussion of the merits.

The act in question is entitled, An act concerning libels, and was passed the 16th *March* 1809. It contains but two sections, as follows.

Sect. 1. Be it enacted, &c. That from and after the passing of this act, no person *shall be subject to prosecution* BY INDICTMENT in any of the courts of this commonwealth, for the publication of papers examining the proceedings of the legislature or any branch of government, or for investigating the official conduct of officers or men in a public capacity.

An act of assembly directs " that from and after the passing of the act no person shall be subject to prosecution by indictment," for a particular offence at common law. *Held,* that it puts an end to a prosecution for that offence, commenced and carried to conviction before the passing of the act, but in which no judgment has been pronounced.

Sect. 2. That in all actions or criminal prosecutions of a libel, the defendant may plead the truth thereof in justification, or give the same in evidence; *and if any prosecution by indictment*, or any action, *be instituted* against any person or persons *contrary to the true intent and meaning of this act*, the defendant or defendants in such action or indictment *may plead this act in bar, or give the same in evidence on the plea of not guilty*. Provided that this act shall be and continue in force for the term of three years, and from thence to the end of the next session of the legislature.

*Rush* for the defendant. The object of the act in question is to take away a crime which previously existed, and therefore that interpretation is to be adopted which favours the suffering party. We contend that it is retrospective, that it terminates all prosecutions heretofore commenced for libels upon the official conduct of men in a public capacity. At the same time it interferes with no private vested right. The government alone is interested in the prosecution of criminal suits; it can terminate them at any stage by a *nolle prosequi;* it can obliterate the prosecuted offence from the penal code; and provided it leaves to the citizen his civil remedy for the injury that is peculiar to himself, it violates no right of property, and it offends no principle of justice. The question is, what was the intention of the legislature. The defendant is under a prosecution by indictment for a libel of governor *M'Kean* in his official capacity; and the first section of the law says, that from and after the passing of the act, no person shall be subject to prosecution by indictment for such an offence. Prosecution has two meanings. The one is confined and technical, and signifies the form or mode of suit, as prosecution by indictment, by appeal, by information; instances of it may be found in 4 *Bl. Comm.* 289, 301, 312, 317, 335. The other is an enlarged general meaning, indicating the whole train or series of proceedings from the commencement of the suit, to the final judgment or sentence. 4 *Bl. Comm.* 320, 1, 2. 337, 362. It is in this sense we speak of a particular stage of the prosecution, or of being discharged for want of prosecution; and so it is emphatically used by *Blackstone*, with particular application to this case, when in the beginning of one of his chapters, he says: " We " are now to consider the next stage of criminal prosecution, " after trial and conviction are past, *which is that of judgment.*"

4 *Bl. Comm.* 375. Judgment therefore is a stage of the prosecution; it is one which we have not reached; it is future to us; and giving " shall" its strongest effect against us, we must still be embraced and protected by it. The words of this section are as complete an arrest of judgment as if the law had said no person shall hereafter be subject to judgment upon an indictment for the publication in question. But there is another ground upon which judgment must be arrested. The law has actually repealed the offence of publishing libels upon the official conduct of men in a public capacity. There is no longer such a crime in our penal code. Now nothing is more certain than that if a statute creating an offence be repealed, all proceedings under it fall. 1 *H. H. P. C.* 238, 291. 1 *Hawk. P. C.* b. 1. c. 40. sec. 10. *United States* v. *Passmore.* (a) The repeal does not merely prevent new prosecutions; it cuts up existing prosecutions by the roots; no one can be *punished* under the statute, unless it contains a saving clause. *Miller's case*, (b) 4 *U. S. Laws* 204. What is the ground of this principle? Simply that the offence is gone; and no one can be punished for what is not a crime at the time of punishment. It must be the same if an offence at common law is repealed; its being by statute is of no consequence. It is the repeal of the offence that is material.

If the first section puts an end to the prosecution, nothing in the second section should sustain it; for the whole act must stand. An argument may perhaps be drawn from the word " instituted" as synonymous with commenced; but no such meaning is assigned to it in any dictionary of reputation. It is defined by *Johnson*, to *fix*, to *establish*, to *settle*; and even if it does signify to commence, it is not used in such a tense as to mean prosecutions begun afterwards rather than before.

As to constitutional objections, they can hardly be expected. The constitution no where says that such prosecutions shall not be abolished. It merely provides for the security of the citizen, by allowing him to give the truth in evidence so long as such prosecutions shall be lawful.

*Levy* and *Ingersoll* for the commonwealth. Constitutional objections to a statute, are of a nature too embarrassing to be

---

(a) 4 *Dall.* 373      (b) 1 *W. Black.* 451

1809.

COMMON-
WEALTH
v.
DUANE,

resorted to, except in a plain case. But if this act is not unconstitutional, it approaches so closely to the verge of it, as to deserve no liberality of construction. By the first section of the ninth article, the constitution declares that all men have an indefeasible right to acquire, possess, and protect reputation; and by the seventh section, in prosecutions for the publication of papers investigating the official conduct of officers, the truth thereof may be given in evidence. The one is intended as a security to reputation; the other as a regulation of the means of protection, so as to make them consist with the interests of truth and the public. Together they imply that nothing shall be done to prevent either the acquisition or vindication of character. They imply a continuance of all the sanctions by which character is defended; and of course the instrument of either a civil or criminal prosecution as the situation of the culprit, or of the prosecutor may demand. To expose a servant of the public to the foulest calumnies, and to leave him no redress but a civil suit against a person who may have been selected for his poverty to be the libeller of virtue, and against whom a verdict for damages would be a solemn mockery, is so complete an overthrow of the means of protecting character, that if the right remains, it may be said to be without remedy. Such a law surely deserves not to be extended by construction.

It is contended to be a retrospective act. It was truly said by judge *Patterson* in *Calder* v. *Bull,* (*a*) that there is neither policy nor safety in such laws; they neither accord with sound legislation, nor the fundamental principles of the social compact; and if it is possible so to construe a law as to prevent this effect, it is the duty of courts to do it, because it is a presumption of reason and justice that such a construction best accords with the views of the lawmaker. The two sections of this act must be taken together; for in the construction of a statute, as of a will, every part should have its influence in fixing the meaning of the whole. The 1st says that no person shall be subject to prosecution *by indictment.* This cannot refer to the *mode* of prosecution; because there is no other mode of criminal prosecution known to our law, *information* being abolished by the constitution. It can therefore only refer to the particular stage of prosecution, in which an indictment is

(*a*) 3 *Dall.* 397.

preferred, and must have been introduced to render the law prospective. The words " shall" and " from and after," fortify this position, as they have nothing retroactive in their meaning. This section then does not repeal the offence; it merely establishes a rule for the future. But how are defendants to take advantage of the rule? The 2d section was made for the purpose of giving the answer; they are to plead the act in bar, or to give it in evidence on the plea of not guilty. Here is another indication of the stage of the cause to which the act applies. They are not to use it in arrest of judgment, but before trial; and of course it cannot be used upon a prosecution that is past trial. If however any thing is wanting to fix the intention, we have it in that clause of the 2d section, by which the remedy is confined to prosecutions *instituted contrary to the true intent and meaning of the act.* Whatever may be the critical meaning of the word *institute,* its legal signification always is, to commence, or begin; and how can a prosecution be instituted against the spirit of the act unless it be commenced afterwards? We have then the words of the first section, which are prospective, the pleading or giving in evidence of the second, which is before or at the trial, the reference to prosecutions instituted against the spirit of the act, which must be afterwards, and a reasonable and just presumption of the intention of the lawmakers, all conspiring to take this prosecution out of the statute.

*Hopkinson* in reply. The law unquestionably provides, that after it is passed, there shall be no such offence as that for which the defendant is indicted. It is no longer an offence in *Pennsylvania.* It cannot be indicted, it cannot be punished, it is taken out of the penal code, not with exceptions, but absolutely; and yet the argument is that this judgment cannot be arrested, and that the defendant must be sentenced for that which at the moment of sentence is not a crime. But what are the words of the law? No person shall be *subject to prosecution by indictment;* that is, as distinguished from civil prosecution; this is the universal language. It comes then to a simple question of fact. Is the defendant now subject to a prosecution by indictment? Is he under it? Does it hang over him? If it does, the law is violated.

1809.

COMMON-
WEALTH
*v.*
DUANE.

The argument for the commonwealth upon the second section, is altogether a fallacy. It is, that the right is merely coextensive with the remedy pointed out; and because the latter refers to the time of trial, prosecutions past trial cannot be intended by the first section. If this be so, then should the defendant even in a subsequent prosecution happen to slip pleading, or pass his trial without vouching the act, he must be sentenced in spite of the law. This is impossible. The whole design of that section is to save an argument upon the question how the act shall get to the knowledge of the jury, whether through a special plea, or as evidence upon not guilty; and upon a similar question much time was consumed upon the trial of this very cause. This is the whole extent of the 2d section, or else the first is a dead letter. There being then an end to the prosecution by the first, and nothing in the second to sustain it, the consequence is plain; and it is all the plainer because retrospective acts taking away offences are so uniformly favoured, that it has become a maxim that existing prosecutions are gone, unless there is a saving clause; it is only with reference to civil suits that the retrospect of a law is unjust, because it trenches upon the vested rights of the citizen.

TILGHMAN C. J. This is an indictment for a libel against the late governor *M'Kean*, in his official capacity. The defendant was convicted, and moved in arrest of judgment. In this situation the act concerning libels was passed, the object of which is to take away the prosecution by indictment, in cases of this nature. The question now to be decided, is, whether the court can proceed to give judgment on the indictment. The counsel for the commonwealth have raised an objection to this law, on the ground of its being a violation of the ninth article of the constitution. Although their argument was rather faintly urged, it is proper to take notice of it. By the first section of the ninth article it is declared, that all men have a right of acquiring, possessing, and protecting property and *reputation;* and it is supposed that the protection of reputation will be less perfect, when the punishment of libels by indictment is taken away. It may be so; and I fear it will be so. But it is sufficient to remark, that the civil remedy by *action* is still left unimpaired, and that the proceeding by indictment is not the

*right* of the *injured party*, but of the *public*. The seventh section of the same article provides, that in prosecutions for the publication of papers investigating the official conduct of officers or men in a public capacity, the truth may be given in evidence. This, say the counsel for the commonwealth, shews, that it was understood that there should be prosecutions by indictment. I think it only shews, that at the time of the framing of the constitution, such prosecutions were lawful, and there was no reason to suppose that they might not continue to be lawful; but there is no ground for drawing an inference, that the constitution intended to *provide* for the *continuance* of such prosecutions for ever. It was intended to protect the defendant by permitting him, when prosecuted, to give the truth in evidence; but there is no intimation that it should be unlawful for the legislature to take away the prosecution altogether.

1809.
COMMON-<br>WEALTH<br><i>v.</i><br>DUANE.

I will now consider the act of assembly. The first section enacts, that " from and after the passing of the act, no person " shall be subject to prosecution by *indictment* in any of the " courts of this commonwealth, for the publication of papers " investigating the official conduct of officers, or men in a pub- " lic capacity." The prosecution by indictment is the only criminal prosecution of such offences known to our law ; because the proceeding by *information* is forbidden by our constitution. When therefore it is said, that a man shall not be subject to prosecution by indictment, it is saying that he shall not be subject to *any* criminal prosecution. Now what is a prosecution? It is the whole proceeding, including the judgment. In the case before us, the judgment, the most material part of the prosecution, remains to be given. Can the court pronounce judgment, and inflict punishment, when the law declares that the defendant shall not be subject to prosecution? I do not see how they can.

But it is contended by the counsel for the prosecution, that although it might be improper to pronounce judgment, if the matter rested on the first section of the law, yet taking into consideration the second section, it will appear on the whole, that there was no intent to give relief in case of prosecutions *commenced before* the passing of the law. It is necessary therefore to examine the second section; for it is true, that in construing any *part* of a law, the *whole* must be considered; the different parts reflect light on each other; and if possible, such a con-

struction is to be made, as will avoid any contradiction or in-consistency. That part of the second section which is material to the present purpose, declares, that " if any prosecution by " indictment be *instituted* against any person, contrary to the " true intent and meaning of this act, the defendant in such in-" dictment may plead this act in bar, or give the same in evi-" dence on the plea of not guilty." It appears then, that the first section declares the *law,* and the second section provides the mode by which in *certain cases* the defendant shall avail himself of that law. The mode of thus availing himself, is con-fined to indictments which have not been *tried;* and I incline to think, although I give no decided opinion, that it is confined to prosecutions *commenced* after the passing of the law. For, without entering into a critical examination of the meaning of the word *institute,* in common parlance, when applied to legal proceedings, it signifies the *commencement* of the proceeding. When we talk of *instituting* an action, we understand *bring-ing* an action. Supposing then that this is the meaning of the word, which is giving the greatest possible weight to the argu-ment for the commonwealth, how will the matter stand? It will hardly be contended that the *affirmative* words in the se-cond section, confine the defendant to the mode of defence pointed out in that section, if the first section entitles him to other modes of defence. For instance, if a prosecution is *com-menced after* the passing of the law, for a matter which on the face of the indictment is a libel against a man in his official ca-pacity, the defendant may surely take advantage of this act, by motion in arrest of judgment, although he neither pleaded it in bar, nor gave it in evidence on the plea of not guilty. I conclude, therefore, that there is no contradiction or inconsis-tency in giving to the second section the construction contend-ed for by the commonwealth; and at the same time allowing the first section to operate in its full extent. If the legislature intended that the proceedings should be *continued* on indict-ments *already* commenced, they ought to have said so express-ly. This law is not drawn as clearly as it might have been. If the same expressions had been used, as applied to a *civil* ac-tion, I should have thought myself warranted in giving it a different construction, because then it would have operated in a retrospective manner, so as to take away from a citizen a *vested right.* But there is a wide difference between a *civil* and

a *criminal* action. In the latter, the commonwealth only relinquishes its own right of inflicting punishment. In nothing is the common law, which we have inherited from our ancestors, more conspicuous, than in its mild and merciful intendments towards those who are the objects of punishment. We apply the principles of this law to the construction of statutes. Supposing, therefore, as is certainly the case, that this act is not without obscurity, I feel myself on the safest and strongest ground, in adopting that construction which takes away the punishment.

My opinion is that the judgment be arrested.

YEATES J. It appears to me that the meaning of the words in the late act concerning libels, " that from and after the " passing of this act no person *shall be* subject to prosecution by " indictment," &c. refers to indictments found after the law was enacted. The expressions of the legislature are in the *future* tense, and in my idea not retrospective. This construction seems strengthened by the second section, " that if any prose- " cution by indictment, or any action *be instituted* against any " person or persons contrary to the true intent and meaning of " this act, the defendant or defendants in such action or indict- " ment may plead this act in bar, or give the same in evidence " on the plea of not guilty." The provisions here relate to indictments thereafter originated or set on foot, and where there has been no plea or trial; and cannot be extended to indictments already found, particularly where juries have passed upon them. I have thrown my sentiments hastily together, within these few minutes past; and deem it my duty to mention them, as the result of my judgment upon the argument.

BRACKENRIDGE J. I am of opinion with the chief justice, that the act of assembly has put an end to the prosecution.

Judgment arrested.