The opinion of the Court was delivered by
Huston, J.
This case arises under the inspection law of Pennsylvania, passed on the 14th of April, 1835, and calls the attention of this Court to the construction of several sections of the act. § 1. “ All flour of wheat, flour of rye, and meal made of Indian corn, shall, if designed for exportation from either of the places mentioned in this section, be liable to be inspected at the respective places as follows: — 1. At the city of Philadelphia, by the inspector of flour appointed for the said city,” &c.; and then proceeds to name other places not material in this case.
§ 5. “Provided, That flour and meal manufactured in any other' state, and put up in casks which shall bear the brand or name of such state, may be exported from this Commonwealth, as the manufacture of the state from which it ¿shall come, and not as the flour or meal of Pennsylvania, without being liable to inspection as aforesaid.”
As one great reliance of the defendants was on the construction of these two sections, I shall notice their arguments. We heard it contended that these sections had no application to flour not intended-for trade with nations foreign to the United States; that if the flour or meal was destined to be carred to another state of the Union, it was not within the law; nor, as it was slightly argued, within the power of our Legislature; and we had the situs and transiius distinguished.
The other states of the Union, though to a certain- extent, forming *456 together with this state one government, are nevertheless for other purposes considered foreign states. This has been so often said and decided, that it would not seem necessary to do any thing more than assert it. That the carrying from Philadelphia to a port in another state, is exportation within our inspection laws, has been decided by this Court in Shuster v. Ash, (11 S. & R. 90.) Flour is among the staple commodities of Pennsylvania; almost the whole of our flour is exported to and consumed in other states of the Union, and if inspection laws are proper and even necessary, (and I shall assume that they are,) no one article can be named to which they have been more generally applied, or to the goodness of which they are more essential.
By our law, flour may be carried out of this state, from any other place than those designated in the act, without inspection and without regard to whether manufactured in this state or elsewhere; but if it is at Philadelphia, and start from that port, whether to another state, or the West Indies, or Eui’ope, it must be inspected. The papers of the ship or vessel, must, by the 43d section of the act in question, (and do by all mercantile usage) show that the flour was laden at Philadelphia; and'it will, at its place of delivery, be exhibited as Pennsylvania flour, unless in accordance to the 5th section it is branded or marked as the produce of another state. The inspection is to secure the quality of flour shipped at the port of Philadelphia. The mark of that inspection gives a character to the flour, wherever it is offered for sale; that, and the ship’s papers, show it came from Philadelphia; there is nothing in the foreign port to show when it came to Philadelphia, or from whence it came, (unless it has the brand or mark of some other state); and if all unskilful or dishonest men, who had badly ground flour, or flour mixed with rye or corn meal, could take it to Philadelphia and export it without examination, and. the papers of the vessel only show that it was laden at Philadelphia, such unskilful and dishonest men, might, for a time make great gain, but to the discredit of all Philadelphia flour, and the loss of all skilful and fair manufacturers and exporters of flour. It is not only necessary then, but absolutely necessary to the effect and utility of our inspection laws, that all flour brought to Philadelphia, to be from thence exported, and which at its place of destination, must and will show that it came from Philadelphia, should be subject to inspection there, unless, according to the 5th section, it is so branded or marked, that it cannot be offered for sale as Philadelphia ■ flour. It is no hardship on those of other states, that they shall either show by brand or mark, where their flour was piade, or if they will lade it for exportation at Philadelphia, without such brand or mark, submit to inspection according to our laws. All manufacturers or exporters of flour from other states, who intend to ship from Philadelphia, may do so without its being subject to our inspection laws; but then it will not go into market as Pennsylvania flour. If *457 they do not brand or mark the name of the state where it was manufactured, and it is exported from Philadelphia, it will reach its destination as Pennsylvania flour, and by our laws must be subject to inspection before it is exported; and it is not made material by the law, and cannot be material in the spirit of the law, whether it lay in Philadelphia an hour or a month: if long enough to be shipped from that port, it must be subject to our inspection laws.
Another question in this case, is — was the flour liable to seizure as forfeited under our inspection laws %
Before we proceed to the section creating the forfeiture, it may be proper to notice some things alleged in the argument. It was suggested, that all crime consists in intention; that it would be severe to deprive the owner, who was at a distance, of his flour, for the fault of ignorant men, who did the unlawful act. That many acts derive their criminality from bad.intention, is true; some acts, however, are highly criminal, where no bad intention, but gross carelessness, and disregard to the safety of others, or the enactments of the law exist; but there is a class of offences created by positive law, where acts which in themselves would be innocent are positively prohibited, from motives of general benefit to the community, or a large portion of it; or certain things are enjoined to be done for the general advantage, though to the loss of the person obliged by the law to do those things: and to do, or not to do those acts, is the subject of punishment by the law. All inspection laws, and all laws imposing duties, are of these classes; and under, these laws the penalty is generally, if not universally incurred, by doing the act prohibited, or (not doing the act enjoined; and the cases cited, seemed to prove this, even where not only’- the goods of the individual transgressing, but the ship and cargo were forfeited, though belonging to persons who intended no wrong and had been guilty of nothing, except negligence, and that not personal, but negligence of the officers of the vessel. No casé was cited where ignorance of the law was suggested as a defence of the individual, who actually contravened its provisions.
In cases under the act in question, the manufacturer or owner, or the owner of a warehouse or vessel, seldom personally assists in carrying, unloading or lading flour into a vessel; and if it were admitted as an excuse, that the unlawful act was done by their hirelings, whether white or black, we might as well repeal the whole act at once. The principal persons would never be present when it was intended to violate its provisions.
It was also contended, that if there was a violation of the law, it was of the 31st and not of the 32d section.
§ 31. Provides that “ No person shall lade or ship for transportation out of this state, any flour or meal liable to be inspected, previously to exportation, as aforesaid, before he shall offer the same to the view and examination of the inspector of flour of the port or plage where the same shall be laden or intended to be laden, or before thé *458 same shall be inspected and approved according to law, under the penalty of seventy-five cents for every cask, one half to the use of the person who shall give information thereof to the inspector or any of his deputies, and th.e-other half to the use of the inspector or his deputy.
And by § 32, “If any person shall offer to transport any such flour or meal out of the state, without being proved or branded in the manner required by this act, the same shall be forfeited, and the same shall be sold by the inspector, and the proceeds thereof paid into the treasury of the Commonwealth.” Certainly these sections are different: may act on different persons, are followed by different penalties; and the forfeitures go in different directions.* The 31st section is personal to the master or person who lades the flour on board his vessel, and imposes a pecuniary fine on him for the unlawful act; which fine goes to the informer and inspector. The master may or may not be owner of the flour; the 32d section forfeits the flour, and affects the owner of the flour, and it is to be sold and the proceeds go to the state; both sections may be violated as to the same flour; and the 75 cents per barrel may be recovered from the person who lades flour not inspected, and the owner may forfeit the same flour, if he by himself or his agents offers to transport it out of the state.
The expression “ offer to transport out of this state” has been commented on as meaning the same as “ shall transport out of this state,” or at least shall set sail from the mooring, or if not meaning the same, as being of doubtful meaning; and then we are told that this act is to be construed by some rule, which will let all offenders against it escape. I have long disliked exceedingly, the phrases “ to be construed strictly” — “ to be construed favourably,” and such like. If it is said the courts ought not to include in the list of crimes, acts not mentioned in the statute, although they may be thought of a similar grade, or more mischevious to the community, I can understand this and agree to it; but 1 can’t agree to any doctrine which authorises a court to nullify a section of a law plainly expressed in word,s understood by every one. Nor can I agree to put a construction on a law, which will admit its obligation, but prevent its execution, or destroy all benefit intended to be produced by it. The officers of the revenue of the United States have their barges and rowers and marines, and can pursue and bring back an offender against their laws. Our inspector of flour has no such aid or assistants; and if the offence is not complete until the vessel has sailed, the offender escapes. The framers of this law and the Legislature, knew this, and by the provisions of this act the offence consists in, and the penalty is imposed not on the actually transporting the flour, but on “ the offer to transport it out of this state.”
*459 It would not be safe to attempt laying down rules, which, in all cases, would decide what was or was not an offer to transport out of this state; but, in a case like this, where all those connected with the transportation were at the place — where no one was expected to arrive, who would examine what had .been done, and correct any irregularity — where the owners and managers of the warehouse a!nd the vessel, put flour not inspected on board, stowed it away, and stowed on the top of it other articles — made out the papers for the vessel, specifying the flour and the quantity, knowing it had not been inspected, or regardless whether it had or not — where the discovery to the officers of inspection was not made by those transporting — if this is not an offer to transport out of this state, then the section is and must be inoperative.
Some cases have been cited, which I proceed to notice. Hancock v. Sturges, (13 Johns. 331,) differs from this case in most particulars. I shall mention two: the act of New York is essentially different from that of this state; and that flour had been inspected and branded at Baltimore, and never could be sold as New York manufacture. If in this case the flour had carried the brand of another state, it is not pretended that it would have been forfeited.
The cases cited from 7 Cranch, 496, and 9 Wheaton, 385, prove, first, that where the penalty or forfeiture is consequent on an act completed, the penalty or forfeiture does not arise on the offer to do the act; and further, that if the penalty or forfeiture arise on the offer, they are incurred by the offer to do the act. The words and plain meaning of the law must decide when the act becomes a violation of it.
I shall not notice the dicta nor the decisions of the Supreme Court of the United States, respecting inspection laws, nor inquire if we could establish an inspection at Philadelphia, of cotton, rice, or any article of a class not produced in this state. Flour is an article which has been, is, and will be a staple article of production in this state, and of export from this state. I do not know of any decision or dictum, which would forbid this state to enact, that all flour manufactured in the state, should be inspected previous to exportation; and that all flour intended to be exported from Philadelphia, shall be also subject to inspection, unless it is branded or marked as the produce and manufacture of some other state— whether it is destined for another state or for Europe, makes no difference. If such were not the case, corn or rye, or buckwheat, or dust and bran, might be branded as superfine flour, and sent abroad undér a Philadelphia manifest or bill of lading as Philadelphia flour.
The duties of the inspector are important; and not the least so -is the duty of seeing that the laws under which he acts are not evaded : to permit their violation and not to attempt to enforce them, would be a dereliction of duty and violation of his oath. To oppose or molest him in the due and lawful exercise of his powers, or execu *460 tion of his duties, is, by the 197th section of the law made a misdemeanor, punishable by fine not exceeding 500. dollars; or imprisonment not exceeding one year, or both, at the'discretion of the Court.
After the foregoing opinion had been pronounced, the counsel for •the defendants laid before the Court a copy of an act of Assembly, • passed on the 31st of March, 1836, (but which had not before come to their knowledge,) entitled “ a supplement to an act entitled ‘ An act relating to inspections,’ approved the 15th of April, 1835,” the material passages of which are as follows: ' '
“ Section 2. Nothing in the act, to which this is a supplement, shall -be so construed as to require the inspection, proving or branding of flour or meal of any kind, shipped or laden on the waters of the Susquehanna and Delaware and their 'branches, and intended to be transported by the. waters of said rivers, to a market out of •this state, but within the limits the United States.
Section 3. So much of the 8th section, so much of the 26th section, and so much of the 31st and 32d sections, and so much of the 157th section of the act, to which this is a supplement, as' is hereby altered, and all other acts and parts of acts relating to inspections, except this act and the act to which this a supplement, be and the samé are hereby repealed.
Section 4. The true intent and meaning of the various sections of the act, to which this is a supplement, relating to foreign produce imported into this state, and thence exported, are declared to be, that no produce imported into this state from any other state or country, shall be liable to inspection prior to exportation from this state, if marked or branded with the name of the state or country whence it was originally exported, though the mark or brand may have been affixed thereto, after its importation within this state: Provided, that - nothing herein contained, shall be construed to repeal any of the provisions of the said • act, imposing penalties for the false marking or branding, or exporting produce raised or manufactured within the state, without inspection: and Provided' further, that nothing herein contained, shall be so construed as .to prevent the inspection •of foreign produce, when it is desired by the purchaser or exporter.”
Mr. Cadwalader, for the defendants, now suggested, that the second section of this act clearly provided for the case which was the subject of this indictment, and that the repeal of the 31st and 32d section of the act of 1835, put an end to the prosecution. He cited the •case of The Commonwealth v. Duane, (1 Binn. 601.)
Pee Curiam.'
We think that the act of Assembly applies directly *461 to this case; and upon the authority of The Commonwealth v. Duane, we are .of opinion that we cannot proceed to give judgment.
Judgment arrested.

 Let it be understood, that I do not mean to lay down all the law as to the construction of the 31st section, nor designate the circumstances which may call for its operation; that has not been discussed: I merely mean to show that it does not apply to this case.