[PHILADELPHIA, FEBRUARY 16TH, 1839.]

# THE BOARD OF HEALTH *against* HAND.

### IN ERROR.

Under the act of the 29th of January, 1818, vessels arriving at the port of Philadelphia from Alexandria and Baltimore, by the way of the *Chesapeake and Delaware Canal*, prior to the act of the 16th of April, 1838, were liable to the health fees of $2 50 for each arrival during quarantine months.

THIS was a writ of error to the Court of Common Pleas for the City and County of Philadelphia, to remove the record of an action brought by The Board of Health of the City of Philadelphia, &c. against Joseph Hand.

The suit came before the Court of Common Pleas by appeal from the judgment of an alderman; and a case was stated in the nature of a special verdict for the opinion of the Court below, as follows.

" The plaintiffs claim in this action seven dollars and fifty cents, under the second section of the act of assembly of January 29th, 1838, for health fees alleged to be due on the Sloop Union from Alexandria, the Sloop Anna Maria, and the Sloop John Patterson, which arrived during June and July, 1836, at Philadelphia from Baltimore, all by the way of the Chesapeake and Delaware Canal and not by sea. The defendant is the owner or proprietor of the said vessels, and they were respectively laden only with articles of merchandise of the growth, produce or manufacture of the United States.

If the Court should be of opinion, that the plaintiffs are entitled to recover, then judgment to be entered in their favour for seven dollars and fifty cents with interest and costs; but if otherwise then judgment is to be entered for the defendant."

The Court of Common Pleas rendered judgment for the defendant on this case, and the plaintiffs took a writ of error.

(The Board of Health *v.* Hand.)

Mr. *Gerhard* for the plaintiffs in error, relied on the act of 29th of January, 1818.

Mr. *James S. Smith, contra,* referred to the act of 16th of April, 1838, sec. 26, and cited *Hogan* v. *The Delaware Ins. Co.* (1 *Wash. C. C. Rep.* 419.) *Commonwealth* v. *Cromley,* (1 *Ashmead,* 179.) *Road in Hatfield,* (4 *Yeates,* 392.) *Commonwealth* v. *King,* (1 *Wharton's Rep.* 460.) *Schooner Rachel* v. *United States,* (6 *Cranch,* 329.)

The opinion of the Court was delivered by

ROGERS J.—To secure the city and port of Philadelphia from the introduction of pestilential and contagious diseases, the legislature passed the act of the 29th of January, 1818. For this beneficial purpose a health office was established, and as the establishment was attended with great expense, it became necessary to provide a competent fund, either by taxation, or otherwise. As it was properly supposed that those who participated in the trade, and shared its benefits, should contribute a portion of the means to defray the expenses, they devised the system in the second section, which, among other things, provides, "that all American vessels, sailing under coasting documents, arriving at the port of Philadelphia, from any port or place in the United States, between the river St. Croix and the St. Mary, (*except ports or places between Sandy Hook and Cape Charles*) shall pay two dollars and fifty cents for each arrival, during quarantine months; and the said vessels during that time shall (if having goods capable of containing contagion, persons, baggage, or clothing from any foreign port or place, or any diseased person,) stop at the Lazaretto, and there be examined by the Lazaretto physician, and quarantine master," &c. The intention of the legislature, in this and the succeeding paragraphs of the same section, was to raise an adequate fund, for the purposes above-stated, and also to subject to examination, and other regulations, all vessels, of whatever description, or from whatever place arriving, which may have touched or traded at any foreign port or place, or which may have on board merchandise of foreign growth or manufacture, or persons, baggage, or clothing, from any foreign port or place, or from any place to the northward or eastward of Sandy Hook, or westward of Cape Charles. All vessels coming within the latter description, indiscriminately, are taxed with the payment of the prescribed fee, unless specially excepted, and the question on the case stated is, whether a vessel arriving at Philadelphia, from Baltimore, by the way of the Chesapeake and Delaware canal, is within the exception. It is contended, that the legislature intended to exempt from taxation vessels coming from all places within the same parallel of latitude. To this it is answered, that at the time the act was passed, vessels coming from Baltimore, and other ports

and places on the Chesapeake and its tributary streams, were compelled to double Cape Charles, and that the exception in the act had reference to the intermediate points on the coast, including the bay and rivers between the designated points. The reason of the distinction was this. Whilst the legislature endeavoured to provide a competent fund, to defray the costs and charges of the establishments, they at the same time sedulously guarded against any injury which might arise to the trade, from too strict and rigorous restriction, and an unequal and burthensome duty. Without the benefit of the exception, vessels arriving from any part of the adjoining states of New Jersey and Delaware, would have been subjected to a burthensome and unequal tax, and to vexatious delay. The trade from these states is in a great measure, in articles of prime necessity, such as fuel, bread-stuffs, and the ordinary conveniences and comforts of life. The intercourse, so beneficial to all parties, is of weekly, if not daily occurrence, is conducted in vessels of small size, and the cargoes are comparatively of but little value, although in the aggregate of great importance. But not so as to the trade of the Chesapeake, at the time. Having to perform a circuitous voyage by sea, round Cape Charles, the vessels employed were of greater tonnage, the cargoes of more value, consisting of articles of a different description, and the intercourse less frequent. The ports, therefore, of the Chesapeake, although within the same parallels of latitude, do not come within the reason of the exception; nor should the operation of the exception be extended by any thing less than a necessary implication. Besides, the legislature seem to have had in view a continuous voyage, by water, and as such, the trade which was carried on through the Peninsula, by packets from Baltimore, was not affected, and hence there was less reason for including them in the exception. In every particular, vessels trading from these parts, are placed on the same footing as if coming from places south of Cape Charles, or north of Sandy Hook. Some line of demarkation must be fixed, and the classification in the act appears to be as equal and just, as any other which could have been devised. The graduation of the fees depends upon the distance, coastwise, of ports or places, within certain designated limits. They equalise, as far as practicable, the burthen imposed, without injury to the trade of the city.

But it is further contended, that the vessel having come by the way of the Chesapeake and Delaware Canal, the fee cannot now be exacted. We are of a different opinion. The change of the course of trade in consequence of the completion of the canal, but which did not enter into the view of the legislature in 1818, cannot alter the construction of the act. I know of no case, and none has been cited, in which it is held, that a change of circumstances, such as these, would change the construction of a statute, although the common law, from its plastic nature, has undergone, and may continue to undergo, a gradual change. In that particular there is a

marked difference between the common and statute law, which we are by no means inclined to disturb.  It is the business of the legislature to apply a remedy, if needed ;  and it would have a pernicious tendency for the Court to interfere.  The harmony and usefulness of the different departments of government is best preserved by a scrupulous refusal to intermeddle in the proper and legitimate functions of each other.  This question has lost some of its importance by the proviso of the 26th section of the act of the 16th of April, 1838, which exempts boats and vessels passing through the Rariton Canal, and Chesapeake and Delaware Canal, from any fee whatever.  Several cases have been put, of inconveniences which have or may arise from a change in the course of trade, growing out of an extensive system of internal improvements.  That this may be so, there can be but little doubt, and hence the propriety of a careful revision, by the proper authority, of the health laws.  But this consideration, as I before stated, cannot alter the construction of the act.

But it is said, the act is repealed.  Of this there is no evidence.  The proviso of the 26th section, before referred to, is prospective, and is intended to regulate future cases.  It certainly was not intended, by a retrospective action, to exempt any persons from the payment of a debt or tax to which they have become subject under a prior act.  To give this retrospective effect, would require express words, or necessary implication, neither of which is perceived.  Cases in which the effect of a repealing statute have been considered, have been criminal prosecutions, to which a different rule has been applied from civil actions.  In *The Commonwealth* v. *Duane*, (1 *Binn.* 608,) the Chief Justice says, " If the same expressions had been used, as applied to a civil action, I should have thought myself warranted in giving it a different construction, because then it would have operated in a retrospective manner, so as to take away from a citizen a vested right."  But there is a wide difference between a civil and criminal action.  In the latter, the commonwealth only relinquishes its own right of inflicting punishment.  Besides, the act creates the debt or duty, but does not prescribe the remedy.  The plaintiff does not need the aid of the act to recover the amount due.

Judgment reversed, and judgment for the plaintiff.