[See Case No. 7,069.]

## Case No. 12,518.

In re SCOTT et al.

[4 N. B. R. 414 (Quarto, 139).] 1

District Court, E. D. Michigan. Nov., 1870.

BANKRUPTCY — RIGHT TO PROVE DEBTS — SURRENDER OF PROPERTY—RECOVERY UNDER BANKRUPT ACT.

1. The right of a preferred creditor to prove his debt is conferred by the bankrupt act [of

8 [From 3 N. B. R. 742 (Quarto. 181).]
1 [Reprinted by permission.]

1867 (14 Stat. 517)], independent of the second clause of section 23, the operation of that clause being merely to suspend that right until such creditor shall have surrendered all property, etc., as therein provided, and in the construction of this clause it makes no difference whether the petition be voluntary or involuntary.

[Cited in Re Stephens, Case No. 13,365; Re Leland, Id. 8,230.]

2. A creditor is only barred from proving his debt when a recovery has been had under sections 35 and 39 of said bankrupt act.

[Cited in Re Kipp, Case No. 7,836.]

At Detroit, in said district, on the 7th day of November, A. D. 1870, before Hovey K. Clarke, register in bankruptcy. I, the above-named register, do hereby certify that, on the 24th day of January last, Jeremiah Fisher filed his deposition to prove his claim against the above-named bankrupts' estate, the consideration of which was stated to be for money paid on the 28th of August, 1869, to take up a note dated June 17th, 1869, payable sixty days after date, and which said Fisher had, at the date of said note, indorsed for the accommodation of said bankrupts; appended to the deposition was a chattel mortgage, dated August 18, 1869, the day before the note became due, executed by the bankrupts, conditioned to pay "a certain note dated June 17th, A. D. 1869, payable sixty days after date, for the sum of five hundred dollars, at the banking office of Fisher, Booth & Co., Detroit, and indorsed by said Jeremiah Fisher, party of the second part, and to save said Fisher harmless from all costs, damages, and expenses by reason of such indorsement; and also to save said Fisher harmless from all costs, damages, and expenses that may accrue to him by reason of the indorsement of any note or notes that may be made to renew or extend the payment of said five hundred dollar note, and to repay to said Fisher any sum of money he may pay on said note of five hundred dollars, or any note given to renew or extend the payment of the same, on demand." The property covered by this mortgage is described as "all the stock of shelf-goods, groceries, and provisions, of the party of the first part, contained in the store now occupied by them in the National Block, on Genesee street, East Saginaw, Michigan, No. 317; also, such other goods kept by said first parties in said store, for sale, not enumerated in the above designation; also the counters, shelving, stove, and gas fixtures, and stove furniture, in the said premises; also, one harness and one delivery wagon, one box-stove and pipe." The deposition filed, as above stated, to prove the claim of said Fisher, sets forth that "deponent has a chattel mortgage, hereunto annexed, marked B, on the property therein mentioned, given as security for his said claim, of which property the assignee has possession, and the estimated value of which is about fourteen hundred dollars. Deponent hereby releases and conveys his claim upon said property to the assignee. On the 29th of March, 1869, A. R. & W. F. Linn, creditors, who had proved their claim against said bankrupts' estate, filed their

petition for the re-examination of the said claim of said Fisher, and alleged, in several specifications, objections to its allowance; whereupon I made an order appointing the 14th day of April for the hearing of said petition, at which time the parties appeared; said Fisher filed an answer and demurrer to said petition, and the examination of said Fisher and of James Moore was taken; and it appearing that questions of law and fact have arisen, as to the right of said Fisher to prove his claim against said bankrupts' estate, I have adjourned the same into court for the decision of the district judge.

On the 18th day of August, 1869, Fisher, the claimant, was liable, as indorser for the bankrupts of their note of July 17, 1869, for five hundred dollars, payable sixty days after date. He has since paid the note, and the amount he claims is the amount he paid to take it up, less the amount of a store account the bankrupts had against him on that day, the 18th of August, one day before the note became due; and upon the statement by the bankrupts, that they would be unable to pay the note at maturity, they executed to the claimant, and he accepted, a chattel mortgage upon their entire stock of goods and fixtures, stated to be worth about fourteen hundred dollars.

By HOVEY K. CLARKE, Register:

The bankrupt act (section 39) provides that any person * *. * who, being bankrupt or insolvent, or in contemplation of either, shall make any * * * conveyance or transfer of * * * property * * * with intent to give a preference to * * * any person who * * * may be liable for him as indorser, * * * shall be deemed to have committed an act of bankruptcy. * * * And if such person shall be adjudged a bankrupt, the assignee may recover back the * * * property so * * * conveyed * * * or transferred contrary to the act; provided, the person receiving such * * * conveyance has reasonable cause to believe that a fraud on the act was intended, and that the debtor was insolvent; and such creditor shall not be allowed to prove his debt in bankruptcy.

It is insisted by the objecting creditors, that on the 18th day of August, 1869, Scott & McCarty were bankrupt or insolvent, that the conveyance of their stock which they made on that day by chattel mortgage to Fisher, was made with intent to give him a preference as an indorser of their note of five hundred dollars. They insist, also, that Fisher had reasonable cause to believe that Scott & McCarty were insolvent at the time he took the mortgage; and, therefore, that under the provisions of section 39 of the bankrupt act, he shall not be allowed to prove his debt. The bankruptcy or insolvency of Scott & McCarty; the intent to prefer their indorser Fisher; and the existence of a reasonable cause for belief of both these facts, by Fisher, are essential to the maintenance of the objections offered by the opposing creditors.

The nature of the transaction is such as to

leave no room for doubt that the bankrupts intended to prefer their indorser. They convey to him their entire stock of goods and store fixtures, upon a condition which will be broken the next day, unless they pay the note which will then fall due, and which they have told Fisher they will not be able to pay. It is difficult to imagine a case more literally within the provisions of section 35 of the bankrupt act, which declares that any transfer or conveyance not made in the usual and ordinary course of business of the debtor, shall be prima facie fraudulent; and this presumption, as I understand it, affects all parts of such a transaction as the one under examination. Such a sale the act declares to be "evidence of fraud," which, to mean anything, must include the bankruptcy, or insolvency, of the vendors, and their intent to give, and the intent of the vendee to accept a preference. This, however, is only a presumption; yet, I suppose it becomes, and is to be treated as conclusive, unless it shall be successfully rebutted. But I do not find anything in the testimony which does this. Fisher testifies, it is true, that he believed Scott & McCarty to be solvent; the question, however, is not of actual belief of solvency, but whether reasonable cause for belief of insolvency existed; and the testimony taken increases, rather than diminishes, the cause to believe the bankrupts to be insolvent at the time the mortgage was given. The claimant, however, rests his right to prove his claim upon the fact, that he has surrendered the mortgaged property to the assignee, as stated in his deposition, and he claims that, by such surrender, he is entitled to prove his debt, and share in the distribution of the proceeds of the bankrupts' estate. The middle sentence of section 23 of the act, is cited in support of this claim; "any person who, after the approval of this act, shall have accepted any preference, having reasonable cause to believe that the same was made, or given, by the debtor, contrary to any provision of this act, shall not prove the debt or claim on account of which the preference was made or given, nor shall he receive any dividend therefrom, until he shall first have surrendered to the assignee all property, money, benefit, or advantage received by him under such preference." The conditional clause at the end of the sentence is construed to confer the right claimed.

To say that a creditor shall not prove until he surrenders, is certainly not equivalent to saying that he may prove when he surrenders; whether such a result be even admissible as an inference, may well be doubted. Possibly it would be, if such inference were not repugnant to any other provision of the statute, nor in conflict with its general policy as gathered from the whole of it. But there is in section 39, a provision utterly repugnant to the exercise of the right claimed under section 23, when the facts of the case are within the provisions of section 39. These facts are: 1st. An adjudication under a cred-

itor's petition. 2d. A preference to a creditor. 3d. Accepted with reasonable cause to believe a fraud on the act intended. When these conditions exist the prohibition of section 39 applies, "such creditor shall not be allowed to prove his debt." This point was decided in Walton's Case [Case No. 17,130], before Judge Deady, in the district court, for the district of Oregon. The facts of this case were, that the bankrupts had confessed judgments in favor of two of their creditors who issued executions and levied on the property of the bankrupts, and notwithstanding they ·professed that it was not their intention to get any preference in the final distribution of the property, but that their object was to avoid the expenses of a division of the moneys under the bankrupt law, their acts were held to be in fraud of the bankrupt act; and though they made no resistance to the seizure by the marshal of the property covered by the execution, and offered to surrender any advantage or preference which they had obtained, they were not allowed to prove their debts. The judge in deciding the case, says: "When the question was first raised as to the right of Allen & Lewis and Henry Failing to prove their debts, I inclined to the opinion, that a creditor who had taken a preference contrary to the act, might in any case be allowed to prove his debt upon the surrender of the property, benefit, or advantage obtained by him under such preference, as provided in section 23. But after long and careful deliberation, I am forced to come to a different conclusion; I am now satisfied that to allow these creditors to surrender their unlawful preference, and come in and prove their debts under section 23, would be to violate both the letter and spirit of the act. It may be admitted that section 23 is of general application in both voluntary and involuntary cases, except as otherwise provided in section 39. But the special provision in the latter section, declaring that a creditor shall not be allowed to prove his debt in a particular case, so far excludes the operation of the general words of the former. Now, this special provision of section 39, covers this case at every point, and therefore takes it out of section 23." Princeton's Case [Case No. 11,433], decided by Judge Miller in the district court for the district of Wisconsin, is to the same effect. The Case of Montgomery [Case No. 9,728], on the other hand, is regarded as an authority in support of the right for which the claimant contends. I think it not improper to say that this case seems to have been very hastily considered; one indication of which is that it assumes to state the provisions of the section above cited, thus: "But section 22 (section 23, undoubtedly intended) provides, that if a person shall accept a preference, having reasonable cause, etc., he may nevertheless prove his claim and receive dividends, if he surrender to his assignee all the property, etc., received by him under such preference." The important

difference between a conditional and an absolute proposition, between permissive and prohibitive statutes, seems not to have attracted the attention of the register who prepared the opinion, nor of the judge who approved it. The utmost that can be claimed for the clause in section 23, is that it becomes permissive on the performance of a condition. To allow a permissive clause to control a prohibitive would certainly be a novelty in the construction of statutes. But to subject a prohibitive clause to the control of one that is only conditionally permissive, seems to me a construction too remote from any possible intention of congress to require further consideration.

This case, Montgomery's, is also regarded as an authority for such a construction of the last sentence of section 39, as makes a recovery by the assignee from the preferred creditor of the money, or property, received, as essential to bar the right of such creditor to prove his debt; and the opinion of the distinguished gentleman who is reputed to be the author of the bankrupt act, and who for this reason is supposed to be well informed as to the intention of the law-makers, is cited as favoring this construction. This, so far as I know, is the only precedent for this method of ascertaining the intention of the legislature, and, it seems to me to be so plainly in conflict with well-established principles of interpretation, that I hesitate to follow it. I hesitate also, because, a close scrutiny of the words of the act neither requires, nor, as I think, permits it. Such a construction necessarily assumes that the words "such creditor," who shall not be allowed to prove his debt, are identical in their application with the words, "the person," in the same sentence, from whom the recovery was had. There is no such identity, because "the person" may be one who has colluded with the bankrupt in making a "disposition of his property to defeat or delay the operation of the act," and not be a creditor at all. It is a more literal, and, therefore, perhaps, more likely to be the true interpretation, to refer the words, "such creditor" back for their antecedent to where the word "creditor" previously occurs, as the object of the bankrupts' intent to give a preference. A "creditor" is also a "person," and therefore the imputation of reasonable cause to believe a fraud upon the act is intended, is a necessity to justify a recovery predicated of both. But "person" will not include "creditor," and, therefore, the party who is forbidden to prove his debt is not identical with the "person" against whom a recovery may be had.

There is, however, a much more satisfactory reason, for rejecting the construction approved in the Montgomery Case than can be derived from such verbal criticisms. I suppose that there is no sounder rule for the interpretation of statutes, none entitled to a more controlling influence, than that all parts of an act must be construed to effectuate its

main purpose. A bankrupt is one who is unable, or who wilfully refuses to pay his debts in full. The main purpose of a bankrupt act is to take the bankrupts' property into the custody of the law, and distribute it equally, in just proportions, among all his creditors. Preferences are the conspicuous frauds in the sense of a bankrupt system, which the law aims to suppress; and just so far as it fails in this, it fails to justify its existence, while, on the contrary, so far as it accomplishes this object, it commends itself to all fair-minded men, and contributes essentially to promote the business interests of the community. But creditors are quite as zealous in seeking preferences, quite as urgent in demanding them, as debtors are to offer or to yield them; and the law which aims to prevent them must apply its restraints upon both. There is, indeed, greater reason for applying these restraints to creditors, than there is to debtors. The motives which actuate debtors to give preferences are, almost always, more excusable than those which, under a uniform bankrupt system, induce creditors to demand them; and it is unjust to visit upon an embarrassed debtor the penalty for giving a preference, and allow the pressing creditor to escape the penalty for the participation in the same transaction, for without the concurrence of both, debtor and creditor, a preference is impossible. The penalty to the debtor is, the deprivation of his right to a discharge. For him there is no atonement. The penalty he has incurred may be enforced by any creditor. The penalty to the creditor should be, exclusion from participation in the distribution of the bankrupts' estate. This is what I understand to be intended by sections 35, and 39. The first of these sections provides for the recovery by the assignee from the preferred creditor of the fruits of such preference. The last excludes the creditor from proving his debt. The enforcement of this penalty with the utmost vigor will still leave a much greater measure of severity to be borne by the debtor. But it is to be remembered, also, that unless the petition, for adjudication of the debtor as a bankrupt, is filed within four months of the time when the preference was given, the creditor will be allowed to retain the fruits of his shrewd forecast for his individual interest; and will be, of course, beyond, the reach of any penalty the bankrupt act can inflict. But if the petition for adjudication shall be filed within the four months, and the act shall be construed as to allow him, by a surrender, to enjoy the right, equally with all other creditors, of proving his debt, it is obvious that the whole reliance for the enforcement of the provisions of the bankrupt act, so far as penalties are concerned, must be upon those which are denounced against debtors; creditors will still be at liberty to employ all the arts and power with which their position invests them to secure themselves; assured of complete success, if

the short statute of limitations of four months shall run in their favor; and if not, that they "can remove the stain of fraud by surrendering the property and disclaiming all intent to become a party to the bankrupts' fraudulent proceedings;" be admitted to equality with every other creditor, to the same extent as though they had made no attempt to evade the letter and spirit of the bankrupt act. I do not think the act ought to receive any such construction; I think that embarrassed debtors are entitled to all the protection against the importunities of their creditors to violate the act, which may fairly be deduced from its provisions. I think that creditors who prescribe to themselves the rule of a careful obedience to the spirit of the act, are entitled to protection against the unscrupulous activity of those who still deem the "race of diligence" open to them and spare no effort to gain its prizes. I think the interpretation of the bankrupt act, should, as far as possible, by the application of every fair rule, be such as will vindicate its equity: and that it should not, by a partial construction in favor of one class of the subjects of its jurisdiction—creditors—weaken any of the safeguards upon which reliance must be placed for the enforcement of the policy embodied in its provisions. With these views I cannot think that any creditor within the provisions of section 39, who has accepted a preference, having reasonable cause to believe a fraud on the act was intended, should be allowed to prove his debt.

All of which is respectfully submitted to the decision of the district judge; together with the depositions and the papers of the parties to the proceeding before me.

LONGYEAR, District Judge. As to the construction of the second clause of section 23 of the bankrupt act. The right to prove claims against a bankrupt's estate is conferred, and the claims which may be proven are defined by section 19. Section 19 is broad enough to cover a claim like that of Fisher, on account of which a preference had been accepted, and but for section 23 such claim would undoubtedly be provable under said section 19. Section 23 operates to suspend the right conferred by section 19 until the creditor holding such preferred claim shall first have surrendered to the assignee all property, etc., received by him under such preference. When such surrender is made the suspension ceases, and the right conferred by section 19, revives and is in full force the same as if no such preference had existed. The office of the clause of section 23, under consideration, is therefore, in the first instance, that of suspension merely, to ripen, however, into absolute prohibition in case of a refusal or neglect to surrender. In re Tonkin [Case No. 14,094]. The right, therefore, to prove the claim after a surrender has been made is not derived from section 23, but is conferred by section 19.

As to the construction of the last clause of section 39, absolutely prohibiting the proof of claims in certain cases. It is a well settled rule that in putting a construction upon any part of a statute, the whole is to be considered, and effect is to be given, if possible, to every clause and section of it; and it is the duty of courts, as far as practicable, so to reconcile the different provisions as to make the whole act consistent and harmonious. Sedg. St. & Const. Law, 238; Com. v. Duane, 1 Bin. 601; Com. v. Alger, 7 Cush. 53–89; Attorney General v. Detroit & E. P. R. Co., 2 Mich. 138.

The position contended for in opposition to the right of Fisher to prove his debt, viz.: That no creditor who has accepted a preference, having reasonable cause to believe a fraud on the act was intended, should be allowed to prove his debt, would render the words "until he shall first have surrendered," etc., in section 23, inoperative and of no force or effect whatever. It will not do to say that those words of section 23, above quoted, are to be given effect in voluntary and not in involuntary cases, because that would involve the absurdity of saying that the quality and consequences of the act of the creditor in accepting a preference, having reasonable cause to believe a fraud upon the act was intended, are to be measured and judged of, not by the act itself, but by what the debtor may see fit subsequently to do or omit to do. That is, if the debtor should see fit to go into voluntary bankruptcy, then the creditor may surrender and prove his debt; but on the other hand, if the debtor should see fit to omit going into voluntary bankruptcy, and some of his other creditors, taking advantage of that circumstance, should put him into involuntary bankruptcy, then such preferred creditor may not surrender and prove his debt, no matter how anxious and willing he may be to do so, and this, too, notwithstanding that the vitiating element of the act of accepting a preference, the fraud is the same in the one case as in the other. It must be a strong necessity growing out of positive and unmistakable provisions of the act, that would induce a court to adopt a construction leading to such unreasonable and inconsistent results. Let us see if that necessity exists, and if a construction of the clause of section 39, under consideration, cannot be adopted, which will lead to more consistent and harmonious results. In Re Tonkin [Case No. 14,-094], above cited, this court held that the "recovery" provided for in the first clause of section 35, is the alternative of the "surrender" contemplated by the second clause of section 23; that sections 35 and 39 must be construed together in pari materia; and that, so far as those sections relate to the same class of matters, all the qualifications, conditions, and prohibitions of the one will apply equally to the other. This view has been recently maintained also by Judge Dillon in the United States circuit court in Missouri.

Bean v. Brookmire [Case No. 1,168]. This court further held in Re Tonkin, that the class of cases provided for in the first clause of section 35, is also provided for in section 39, and therefore, under the rule stated, the express prohibition contained in the last clause of section 39, applies equally to section 35; that the conditional prohibition of section 23 becomes absolute and perpetual in case of a recovery under the first clause of section 35, and that so far as that class of cases, viz., unlawful preferences, is concerned, the express prohibition of section 39 was unnecessary, but that sections 35 and 39 provide for recovery in other cases than those of preference merely, such as payments, sales made, etc., with a view to prevent the debtor's property from coming to his assignee in bankruptcy; money, goods, etc., obtained by a creditor as an inducement to forbear opposition to the bankrupt's discharge; and assignments, gifts, sales, etc., with intent to delay, defraud, or hinder creditors, to none of which the prohibition of section 39 will apply. And this court, in view of the above considerations, further held as follows: "The express prohibition contained in the last clause of section 39 was inserted there in order to prescribe one general rule, applicable alike to all cases of recovery of money, or property, paid, conveyed, etc., to creditors, contrary to the bankrupt act."

After a thorough and careful reconsideration, I see no grounds for changing, or in any manner qualifying, the above construction of the clauses in question, and although that construction was given in a case somewhat different from the present one, yet it is fully applicable to this case.

The construction above given to the clauses in question, results then as follows: First. That the right of a preferred creditor to prove his debt is conferred by the bankrupt act, independent of the second clause of section 23, and that the operation of that clause is merely to suspend that right until such creditor shall have surrendered all property, etc., as therein provided. Second. That upon such surrender being made the right of such creditor to prove his debt revives, and is in full force, the same as if such suspension had never existed. This applies the same whether the proceedings in bankruptcy are voluntary or involuntary. Third. That the prohibition of the right of a preferred creditor to prove his debt, contained in the last clause of section 39, applies only in cases where a recovery has been had under sections 35 and 39; and, that the right to surrender under section 23 ceases, and the right of such creditor to prove his debt is forever barred after such recovery.

This construction gives to each clause of the act under consideration full force and effect, and makes one consistent and harmonious system of the two. It is entirely consistent, too, with the general purpose and scope of the bankrupt act. It says to the

creditor who has accepted an unlawful preference, surrender what you have thus unlawfully received, and thereby make the estate whole, as it would have been but for your act, so that no harm shall come to the other creditors on account of it, and you may come in and share with the other creditors; but if you refuse or neglect to do this, what you have so received shall be recovered from you, and you shall be deprived of all benefit or advantage on account of your debt.

In this case, it appearing from the facts certified by the register that the creditor, Jeremiah Fisher, has surrendered to the assignee all property, etc., received by him under his preference, within the meaning of section 23 of the bankrupt act, he may prove his debt against the said bankrupt's estate.