THE PEOPLE, on the relation of J. Fleming, *vs.* LIVING-
STON, sheriff of Monroe.

*Where the real estate of a defendant in an execution was sold in August
1829, and the fifteen months given to a creditor to redeem, of course expir-
ed in November, 1830, after the revised statutes went into operation, and
the creditor omitted, on paying the amount bid and the interest thereof, to
produce to the sheriff a certified copy of the docket of his judgment, in compli-
ance with the requirements of the revised statutes, it was held, that the
creditor was not entitled to succeed to the rights of the purchaser, by hav-
ing a deed executed to him of the premises sold.*

*Where an inchoate right accrued under the statutes as they existed previous
to the late revision, and by the revised statutes the proceedings to perfect
the right are regulated and prescribed, such regulations and requirements
must be pursued, or the party is remediless.*

*The saving of rights, &c. in the repealing act of 1828, varies from the provis-
ions in similar statutes formerly passed, in omitting to provide that suits
and proceedings should proceed as if the acts repealed had remained in
force.*

March 3.     REDEMPTION of lands sold under execution.   On the 26th
*August*, 1829, the sheriff of Monroe, by virtue of an execu-
tion issued on a judgment rendered in 1823, in favor of the
Bank of Utica against Palmer Cleveland and Solomon
Cleveland, *sold* an undivided third part of a certain lot on
the east bank of the Genesee river, on which a stone flour
mill was erected, and struck off the same for the sum of

ALBANY,
March, 1831.

$1505,41, to the plaintiffs in the execution, they being the highest bidders, and executed to them a certificate of sale. The relator having on the 2d August, 1826, obtained a judgment in his favor for $5014,25, against Solomon Cleveland, one of the defendants in the judgment on which the property was sold, applied to the sheriff of Monroe on the 26th *November*, 1830, as a judgment creditor to *redeem* the property sold. He presented to the sheriff an *affidavit*, stating that there was due on the judgment in his favor about the, sum of $3484,36, and *paid* to the sheriff the sum of $1694, being the amount of the bid at which the property was sold to the Bank of Utica, with the interest thereof, at the rate of *ten* per cent. per annum, and demanded a deed of the premises sold. The sheriff said that he had no doubt that the relator was a judgment creditor of Solomon Cleveland, and had the right to redeem, but as it might be necessary to present to him at the time of redemption a certified copy of the docket of his judgment, and as no such copy had been presented, and as he had not seen the owner or possessor of the property, he must *decline* giving a deed at that time. On the next day the sheriff having been indemnified by the possessor of the property, refused to execute a deed of the premises to the relator. On the 21st December, 1830, the relator served on the sheriff of Monroe a copy of the record of judgment in his favor against Solomon Cleveland, duly certified by the clerk of the court in which the same was docketed ; exhibited to him the title deeds relative to the property sold, shewing that on the day of sale Solomon Cleveland was the sole and only owner of the same ; and again demanded a deed, which the sheriff again refused to execute. On this state of facts an application was made in behalf of the relator for a *mandamus*, commanding the sheriff to execute the deed.

*H. Bleecker*, for the relator. The relator being a creditor of the defendant, the sole owner of the property sold, and having a judgment which was a lien on the real estate of such defendant, had the right within 15 months after the sale, in default of the defendant, to redeem the land, and on

The People
v.
Livingston.

such redemption, became entitled to all the rights of the original purchasers, and to have a deed executed to him of the premises by the sheriff. *Statute Law of* 1820, *p.* 167. Although the relator did not comply with the *forms* prescribed by the revised statutes, it was the duty of the sheriff to have executed the deed to him on his compliance with the *essentials* of the statute, viz. the payment of the amount of the bid with ten per cent. interest thereon. The sheriff was satisfied that the relator was entitled to redeem, and objected to execute the deed only on account of the non-production of a copy of the docket of the judgment, which was subsequently furnished, when the sheriff ought to have executed the deed. The relator was a judgment creditor previous to the sale, and by the existing law previous to the revised statutes going into effect, a contingent right to redeem was granted to him, in case of the default of the defendant to redeem. The rights of the creditor, as well as of the purchaser, were declared by the act of 1820, and were not affected by the *revision*. By that act the purchaser was entitled, on redemption, to *ten* per cent. interest, which was paid to the sheriff; by the revised laws he could have claimed only *seven* per cent. interest. If the law of 1820 fixes the rights of the purchaser, the rights of the creditor are equally secured by the same act.

*B. F. Butler,* contra. The relator as a creditor had no right to redeem, until after the lapse of 12 months subsequent to the sale, 1 *Cowen,* 459; and when such right accrued the revised statutes had gone into effect, and to entitle the relator to avail himself of the provisions of those statutes, he should have complied with their requirements by not only paying the amount of the bid and the interest thereof, but also by presenting to the sheriff an affidavit of the amount due on his judgment, and a copy of the docket of his judgment 2 *R. S.* 373, § 60. This is said to be matter of form, and ought not to control the substantial rights of parties; but a neglect of those forms, and a disregard of the requirements of the statute in this particular, might lead to perplexing difficulties and embarrassments, and

parties ought therefore to be held to a strict compliance. Allowing, however, that the creditor acquired under the act of 1820 a contingent right to redeem, such right is not destroyed by the revised statutes; it remains, but the *mode* of perfecting the right is regulated. On this subject the act of 1820 was silent; but the court had adjudged that proof, similar to that now required by statute, should be exhibited to the officer. 1 *Cowen*, 458. The rights of the relator accruing under a statute which is repealed, and consolidated in the revised statutes, the subsequent proceedings to perfect his rights must be regulated by those statutes. 4 *Wendell*, 210. The relator not having conformed to those provisions, is not entitled to the deed he asks for. The right of the purchaser to receive *ten* per cent. instead of *seven* per cent. interest, arises under the act of 1820; the purchase having been made previous to the revised statutes going into operation, his right had become vested and could not be defeated, but by a compliance with the terms of that act.

*By the Court*, SAVAGE, Ch. J. By the first section of the repealing act of the 10th December, 1828, 2 *R. S.* 779, the act of 1820, under which the relator claims his deed, was repealed from and after the 31st December, 1829. By the 5th section of the repealing act, it is enacted that "The repeal of any statutory provision by this act shall not affect any act done, or *right accrued* or established, or any proceeding, suit, or prosecution, had or commenced in any civil case previous to the time when such repeal shall take effect; but every such act, right, and proceeding, shall remain as valid and effectual as if the provision so repealed had remained in force." This repealing clause varies from most, if not all others which are to be found in our statute books. Take, for instance, the proviso to the repealing section of the fifty dollar act of 1824. The 43d section of that act, after repealing the act of April 5th, 1813, and all subsequent acts relating to the same subject, proceeds as follows: "Provided that nothing in this act contained shall affect any actions or suits heretofore commenced, or which may be commenced, previous to the fourth day of July next; but the same

*may be proceeded in* and *determined* as though this act had not been passed." It is plain from this that every suit commenced under the old acts should be prosecuted throughout, and *proceeded in,* in the language of the statute, under the former acts, precisely as if they had not been repealed. So also in the repeal of the acts previous to the revision of 1813, from which the 5th section under consideration seems to have been in part taken. 2 *Revised Laws of* 1813, *p.* 556. After repealing certain acts, this proviso follows, omitting so much as relates to penalties and forfeitures : " Provided, however, that such repeal shall not affect any act done, right accrued or established, proceeding had, suit or prosecution commenced, previous to the said 1st day of December next ; but every such *act, proceeding,* and *right,* shall remain as valid, *and every such suit or prosecution may lawfully proceed,* as if all the acts and parts of acts hereby intended to be repealed had remained in full force." In both of these acts it is declared that any suit or proceeding commenced before the day therein mentioned, shall remain valid and effectual as if the repeal had not been made. The act of 1813 says that such suits and proceedings *shall proceed* as if no repeal had taken place. The act of 1828 is silent on that point, and its phraseology very different. In my opinion the effect is, that every *suit, right, &c.* remains in force, notwithstanding the repeal of the act which supported them ; but their future proceedings must be governed by the statutes then in force, i. e. the revised statutes. It will not be denied, I presume, that it is competent for the legislature to repeal any act upon which a suit has been brought, and if the repeal is absolute, such suit is at an end. For instance, the present statutes prohibit gaming, and allow an action to be brought to recover back money won at play ; an action is brought and ready for trial ; the day before the circuit, the legislature repeals the act ; the suit dies because the court has no jurisdiction to proceed, and the party has no right to recover his money. Such right did exist, subject to the contingency of obtaining a judgment, and such jurisdiction, too, existed ; but both have been taken away, because the means of enforcing the right no longer exist. The common repealing clause is so much a matter

ALBANY,
March, 1831.

The People
v.
Livingston.

of course with the legislature, that the continuance of the suit and the enforcing of the right seem so much like a common law, or perhaps constitutional right, that we are unwilling to believe that it has been, or can be infringed. But it cannot be denied that the legislature possess the power to take away by statute what was given by statute, except vested rights. As it is undoubtedly competent for the legislature to repeal absolutely, so it is competent, notwithstanding the repeal, to continue the old law in force as to the proceedings commenced under it ; to substitute another law in place of the old one ; and to direct that all future proceedings in the progress of a cause, or the prosecution of a right, shall be governed by such new law. This, in my judgment, is precisely what has been done by the repealing act of 1828. The old laws died with the year 1829, and with the commencement of the new year, the new laws were ushered into being.

It seems to me to have been the intention of the legislature to confirm all rights which had accrued—to be enforced, however, according to the new remedy ; and that where rights accrued were subject to a contingency, the consequences of the new laws must follow upon that contingency. For instance, in the case of *The People* v. *Herkimer Common Pleas*, 4 *Wendell*, 210, the appeal was brought in 1829, and though the law of 1824, by virtue of which the appeal was brought, was repealed, yet the appeal remained effectual ; but the right of the party to costs was not established till the trial was had in the common pleas ; by the new law, the consequences of that trial as to costs were different from what they were under the old law. The only right which was established under the old law, was the right to appeal ; and as the repealing statute gives no right to *proceed* under the old law, the party must proceed under the new ; and by that a new rule is established as to costs, and that rule is and must be applicable to all trials had under them ; and hence Mr. Justice Marcy said : " Those statutes take up the proceedings in causes pending, where they find them ; and where the statutes under which those proceedings were commenced are repealed, the subsequent proceedings must be regulated

by the revised statutes ;" and I add, they must be so regula-
ted, because there is no authority to continue those proceed-
ings under any other statutes. The clause in the repealing
act of 1813, providing that every suit or prosecution might
lawfully proceed as if there had been no repeal, is not found
in the repealing act of 1828—there is no such provision.
That clause was omitted, and no doubt intentionally, that
there might be a harmonious system; not two codes of
laws, one to be administered to one set of suitors, and anoth-
er code for other suitors. . Whether this be the correct view
of the question or not, it is that which has been adopted up-
on as much reflection and examination as the pressure of
business during term would permit, and for the present must
be considered the law of this court. I am aware there may
be difficulties in some cases, but those difficulties will be met,
if possible, as they arise.

What then were the rights of the redeeming creditor un-
der the act of 1820 ? I answer, that while that act was in
force, he had no rights at all ; for one year the right of re-
demption was exclusive in the defendant in the execution
and his grantees ; but if the right of the creditor to redeem
may be considered as inchoate and dormant from the sale,
that would not change his situation. The old law gives merely
the right of redemption, but prescribes not the manner of re-
deeming. It is consistent with the existence of the right to
redeem, to vary the evidence which shall be produced to the
officer. Under the old statute, there was no *right established,*
in the language of the revised statutes.

Even if it were as the relator contends, he has not done
enough to entitle himself to a deed ; he did not within the
fifteen months, produce any evidence of his judgment. The
act of 1820 was silent as to the evidence to be produced.
This court was compelled to say what evidence should be
sufficient, and we held that an exemplification of the record,
or at least the clerk's certificate, should be produced, 1 *Cow-
en,* 458. The relator produced neither. An affidavit of the
amount was produced ; this was complying with one of the
requisitions of the revised statutes, which is not found in the
act of 1820, or in the decisions upon it ; so that even the re-

lator himself, in that particular, supposed the revised statutes to be operative. He did not entitle himself to a deed, and the motion for a mandamus must be denied, with costs.