By the Court, Cowen, J.
It is not denied that Mr. More-house acquired a right to redeem under the statute of May *327 12th, 1837, (Session Laws of that year, p. 455,) nor that .his proceedings to redeem were in all respects • conformable to the statute. This gave the mortgagor, or his assignee, a' right to redeem at any time within one year from the time of sale under the mortgage, or under any decree for foreclosing the mortgagor. Mr. Corning took his deed and acquired a right to redeem in February, 1838, while the statute stood unlimited in its duration; and Mr, Morehouse, though he took title from Mr. Corning after the act of April 18th, 1838, (Session Laws of that year, p, 261,) rn.ast.un-doubtedly be regarded as standing in his place and holding ' all his rights under the first statute. While Mr. Corning held the right of redemption under that statute, the act of April 18th, 1838, was passed. This act (§ 5) extended the right of redemption under the former act to judgment creditors and others having a lien on the premises ; thus letting in the right under the Caryl judgment of 1832, also acquired by Mr. More-house a few days before he came to redeem. The clause letting in lien holders to redeem was thus: “The' words 1 mortgagor, his personal representative or assigns,’ in the first section of the act hereby amended, specifying who may redeem, &p. shall be held to include each and every person, &c, that have or shall have any legal lien,” &c. This was entitled, an act to amend the former, and limit its duration; and the 9th section of it was thus: “ The act entitled, &c. (act of May 12, 1837,) is hereby repealed; such repeal to take effect after' the first day of November next?
It is difficult to see how Mr. Morehouse could claim any right to redeem as a judgment creditor. All .his right in - this respect (which I admit must be regarded the same as" Caryl’s) arose under the act of April 18th, 1838, and not having been exercised, fell with that act on the first day of November in the same year. The enactment was—“you may redeem as judgment creditor, if you will do so "by that day.” This he did not attempt till Dec. 8th, 1838. The very statute which gave the right, fixed the (limitation; and had he stood upon his rights as a judgment creditor only, *328 there would be no circumstances in the case calling for a struggle to save him from the ordinary effect of the repealing .clause. The general rule' undoubtedly is, that “ When an act of parliament is repealed, it must be considered the same as if it had never existed, except with reference to such ' parts as are saved by the repealing statute.” (Per Lord Tenterden, C. J., in Surtees v. Ellison, 4 Mann, & Ryl. 586, 588; 9 Barn. & Cress, 750, S. C.)
But Mr. Morehouse also came within the very terms of the first, statute, and sought to redeem two days before the period limited by that act and the terms of the master’s certificate had expired. He therefore insists, that Mr. Coming’s right to redeem having become perfect under the first act, and before the repealing act passed, could not be, or at least was not intended to be divested by the latter.
In the first place, it is insisted that the legislature had no constitutional power to interfere with Mr. Coming’s right; that he having purchased, and afterwards allowed the now plaintiff to bid in the premises at the master’s sale, under a prior mortgage, upon the statute which gave him a full year to redeem after the sale, an obligation arose to allow the whole time; which obligation could not be impaired by state legislation. Had the repealing statute, in terms, taken away the remedy by redemption, against his debtor’s property, the objection might be well founded. But it did not. It still left him from the 11th of December, 1837, to the 1st of the next November. This right of redemption was a matter of remedy; and admitting the repealing clause to operate against him, it would, therefore, seem to come clearly within those cases which declare statutes of limitation to be without the meaning of the constitution. (3 Story's Com. on Const. U. S. 251, and the cases there cited.) The statute was no more in effect than saying, “ Unless you redeem within the shorter time prescribed, you shall have no action for a recovery of the land, nor shall your defence against an action be allowed, provided you get possession.” Were the question res nova, we might feel great difficulty in distinguishing between the obligation *329 of a contract and a remedy given by the law to enforce it. It is difficult, under the notion that obligation and remedy are essential to each other, to see how the latter can be impaired without producing the same consequence to the former. Yet, the authorities are abundant, both in the United States courts and bur own, that a statute impairing the remedy is constitutional, especially when it operates merely by way of limitation in point of time. (Jackson, ex dem. Lepper, v. Griswold, 5 John. R. 139, 142.) At any rate, the argument, on constitutional ground, is no stronger against the last statute, than it is against the first. If allowed, therefore, it would operate as a two edged sword. Taken either way, it cuts down the rights of the defendant.
The next question is, whether, independently of the constitution, there be any rule of legislative power, or any rule of construction, by which we are bound to say that the right of Mr. Morehouse is withdrawn from the effect of the repealing clause; indeed, whether we can say so, consistently either with authority or principle. Strong expressions may be found in the books against legislative interference with vested rights; but it is not conceivable, that after allowing the few restrictions to be found in the federal and state constitutions, any farther bounds can be set to legislative power by-written prescription. (Vide Charles River Bridge v. Warren Bridge, 11 Pet. 420.) (a) Every right resting in perfect obligation is vested; and such a right being conferred by statute, renders it no more sacred than if it were sanctioned merely by the law of nature, or the common law. A state statute granting a gratuitous pension, was repealed before any payment had been made under it. And a very learned court agreed unanimously that, if the grant did not amount, to a contract, the pension was gone. A majority holding that it did not, rendered a judgment in favor of the statte, in an action by *330 the pensioner for its recovery. (Dale v. The Governor, 3 Stewart’s Ala. Rep. 387.) Such a repeal certainly strikes one as highly impolitic. But independently of constitutional restraint, no approved writer can, I apprehend, be found either on our own, or the civil law, or the law of nature, who has denied the abstract power to repeal. Indeed, this power in our own legislature was expressly asserted and acted upon, in The People v. Livingston, (6 Wendell, 526, 530;) and that, too, in respect to an inchoate right of redemption. "The question is' thus reduced to one of mere construction on the repealing clause before us.
The effect of such a clause on a previous statute which imposes a penalty, or confers jurisdiction upon a court, even in civil cases, is not denied. In the first case, the penalty is gone, though the repeal take place while the prosecution for it is.pending, (Yeaton v. The United States, 5 Cranch, 281. The Schooner Rachel v. The Same, 6 id. 329. The United States v. Passmore, 4 Dall. 372. Commonwealth v. Duane, 1 Bin. 601. Abbott v. Commonwealth, 8 Watts, 517. Rex v. M’Kenzie, Russ. & Ry. Cr. Cas. 429. In the latter, though the party may have instituted his suit, and it be pending at the time of repeal, the jurisdiction is gone, and with it all his right. (Miller's case, 1 Black. Rep. 451. Stoever v. Immell, 1 Watts, 258. Road in Hatfield, 4 Yeates, 392.) The repeal of a law imposing a penalty, though it take place after conviction, arrests the judgment. (Commonwealth v. Duane, 1 Bin. 601, 608.) And in Miller’s case, the repeal was held to work the same consequence against a civil right. A more full history of that case is given in 3 Burr. 1456, where it is reported as Rex v. The Justices, &c. of London. Under the act, 1 Geo. 3, ch. 17, § 46, called the compulsory clause, Miller, an imprisoned insolvent, had . been compelled to assign his property, and was entitled to be discharged by an order of the court of quarter sessions, as early as the 26th September, 1761. But the 2 Geo. 3, ch. 2, had already passed, repealing the compulsory clause, such repeal to take place from and after the ,19th of No *331 vember of that year. The insolvent urged his discharge; but the sessions adjourned from time to time till after the 19th, and then refused to grant it, on the ground that the repealing act had taken place. On motion for a mandamus, Lord Mansfield, Ch. J. delivered the opinion of the court, “ that no jurisdiction now remained in the sessions.” He recited the repealing clause, which to be sure was very strong, “ that from and after, die. the same is hereby repealed to all intents and purposes whatsoever” But this,- according to what was held in Surtees v. Ellison, and other cases on the repealing "clause in 6 Geo. 4, ch. 16, was no more than a simple repeal. The first section of the 6 Geo. 4, simply repealed all the previous statutes of bankruptcy; but by the last section, the statute was not to take effect till the 1st September, 1825. And there being no saving clause as to the acts of bankruptcy committed, or any inchoate proceedings under the former acts, it was held, that the court had no power to imply a saving, although it was plain, that by a mere inadvertence in legislation, the kingdom was left for a time entirely destitute of its bankrupt law. The court were pressed for a construction which might avert so great a general evil. But Lord Tenterden said: “ We are not at liberty to break in upon the general rule;” though he admitted it was very "unfortunate that an act of so much importance should have been framed with so litttle care. In a previous case, Best, Ch. J. said, that on the 1st September, all the former acts were entirely got rid of. (Maggs v. Hunt, 12 Moore, 357, 359; 4 Bing. 212, S. C.) In a subsequent case, a struggle was made to save a deposition, as evidence, which had been taken to support a commission of bankruptcy, under the former statute, (5 Geo. 2, ch. 30, § 41,) but which deposition did not happen to have been enrolled, as that section required, in order to make it admissible. It was, in all other respects, completed under the former statute; but the party inadvertently omitted the act of enrolment, till after the repealing clause took effect. And the court held, that no right remained even to enrol, although the repealing act *332 provided the like power of enrolment in proceedings under itself. In short, after much consideration, the court declared that the clause operated a simple repeal; and Lord Ch. J. Tindal laid down the rule applicable to such a case. He said: “I take the effect of a repealing statute to be, to obliterate it [the statute repealed] as completely from the records of the parliament, as if it had never passed, and that it must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted and concluded, whilst it was an existing law.” (Key v. Goodwin, 4 Moore & Payne, 341, 351.) It will be perceived, that the rule laid down in this and several other cases, has no respect whatever to the circumstance that the repealed statute was either of a criminal or jurisdictional character. Nor is it perceived why, in case of a civil right, an exception is not just as practicable in favor of a jurisdiction given to enforce the right, as of the right itself.
It is scarcely necessary to observe, that, in all these cases-, from that of Miller, down to Key v. West, there were strong-, er arguments either of individual justice, general policy or construction, from the provisions of the repealing acts, than we can find in the case before us. Here, the party had nearly the whole original time saved to him by the repealing statute; and the perfecting of his right depended on himself. In a majority of the cases cited, it-was not so. The English enactments concerning bankruptcy- were continued, with some modifications, by the act which contained the repealing clause. Here, the former act was condemned in its very principle by a general repeal. It had, moreover, existed but a short time, and very few rights could have arisen under it, compared with those which were cut off by the repeal of the English bankrupt laws. These considerations answer the argument used at the bar,- that the legislature could not have intended to abridge the time of redemption, conferred by the act of 1837 on. the mortgagor and his assigns, by the repealing clause in that of 1838, one object of which latter was, to confer the same *333 right on creditors of the mortgagor having a lien. On authority, then, at least, no rights arising under the repealed statute can be saved, except by express reservation in the repealing statute, or where those rights have been perfected, by taking every step which depended for its force on the former act. Dwarris expresses the result of the cases in this way: “When an act of parliament is repealed, it must be considered, except as to those transactions passed and closed, as if it never existed.” (Dwar. on Stat. 676.) The meaning of the exception is illustrated by an older case. The statute 1 and 2 Phil. & Mar. allowed devises to spiritual corporations, and such a devise was made and took effect. The subsequent repeal of the statute, by 1 Eliz. c. 1, was held not to affect the right of the devisee. (Jenk. Cent. 233, case 6.) It would not have been so, however, had the testator lived till the 1 Eliz. had been passed. In People v. Livingston, before cited, a creditor had, in August, 1829, acquired a right to redeem in a certain form under the then statute of executions, which, by an enactment in 1828, was to be repealed from and after the 31st December, 1829. The repealing statute substituted a new form of redemption. And Savage, C. J. was of opinion, that an attempt, after the 31st December, to redeem according to the old form, was nugatory. The right to redeem in a certain form being inchoate, and not expressly reserved by the repealing statute, it was held to have died with the old law, at the close of the year 1829. The decision seems to have been in exact conformity with the principle of the English cases.
A number of cases have been cited by the counsel for the defendant, and some very strong ones, to show that any enactment of the legislature annulling contracts, or creating new exceptions and defences, shall be so construed as not to. affect contracts or rights of action existing at the time of the enactment. (Gillmore v. Shooter's Ex'r, 2 Mod. 310. Dash v. Van Kleeck, 7 John. R. 477. Couch, q. t. v. Jeffries, 4 Burr. 2460, 2. Vid. also Churchill v. Crease, 2 Moore & Payne, 415; 5 Bing. 177, S. C.; and *334 Terrington v. Hargreaves, 3 Moore & Payne, 137, 143; 5 Bing. 489, S. C.) Cases are also cited, to show that a statute, in any way modifying the remedy of a party by action, shall never be so construed as to affect actions brought before the statute. (Bedford v. Shilling, 4 Serg. & Rawle, 401. Duffield v. Smith, 3 id. 590, 598, 9.) One case was cited, that a statute requiring sheriffs to deliver over all executions to their successors, though such executions were partly executed, should not touch sheriffs then in office. (Osborne v. Huger, 1 Bay, 179.) But these are all cases relating to positive enactments. None of them arose on a repealing clause; and they merely recognize the well settled rule, as laid down by Best, C. J. in the late case of Terrington v. Hargreaves, viz. "that the provisions of a statute cannot have a retrospective or ex post facto operation, unless declared to be so by express words, or positive enactment.” (Vid. 3 Moore & Payne, 143.) But, both in that case, and Churchill v. Crease, an express provision was allowed to have such an operation. (Vid. also The People v. Herkimer Common Pleas, 4 Wend. 210.) All this is but following out the ancient rule of construction cited by the defendant’s counsel from Bracton, and Coke’s Institutes, (Brac. lib. 4, fol. 228; 2 Inst. 292;) a rule shown to be still more ancient, by the counsel’s reference to the writers on the civil law and the law of nature. (Taylor's Elem. Civ. Law, 167, 8, 9. Puf. B. 1, ch. 6, § 6.) The strongest illustration in the books is,, perhaps, to be found in Dash v. Van Kleeck, (7 John. R. 477.)
I understand the rule of the writers on the Roman law, perfectly to agree with that acted on by our own courts, in all their decisions, ancient and modern. These writers speak of rights which have arisen under the statute not being affected by the repeal; but the context shows at once what sort of rights they mean. The amount of the whole comes to this: that a repealing clause is such an express enactment, as necessarily divests all inchoate rights which have arisen under the statute which it destroys. These *335 rights are but an incident to the statute, and fall with it, unless saved by express words in the repealing clause. We are also reminded from Bracton and the Institutes, that nova constitutio futuris formam imponere debet, non prceteriiis. (Bract. lib. 4, fol. 288. 2 Inst. 292.) Pufendorf, for instance, says: “ The law itself may be disannulled by the author; but the right acquired by virtue of that law whilst in force must still remain.” He adds: “ Suppose it were a law that, as a man disposed of his possessions by will, so the right to them should stand. It would be very fair in the sovereign to retrench this liberty of testaments, and to order that, for the future, all these inheritances shall pass to the heirs at law. Yet it .would be unreasonable to take away from persons what fell to them by will, while the former law was in use and vigor.” To the same effect, Dr. Taylor, (p. 168,) cites the Digest, that the legislator cannot amend the law which to another has created a right, adding the same instance with Pufendorf: And this instance, it will be remembered, is the same as that reported in Jenkins, viz. a devise under a statute afterwards repealed. Here the right had so passed as to be not only vested, but to stand entirely independent of the statute. I know that rights of action, and other executory rights arising under a statute, are said to be vested. (Couch v. Jeffries, 4 Burr. 2462, and vid. Beadleston v. Sprague, 6 John. R. 101.) They are so, and a subse- . quent statute ought not to repeal them, though it may do so by express words, unless they amount to a contract within the meaning of the constitution. But that-being out of the way, and the statute being simply repealed, the very stock on Ivhich they were engrafted is cut down, and there is no rule of construction under which they can be saved. The very terms of the defendant’s proposition, when plainly stated, would seem to show that he could have had no right, in the nature of things, after the first of November. His right to redeem depended on a statute which, he admits, had no existence at that time. The general distinction lies between those rights which are executed, and those *336 which are executory; or, as it would have been expressed by the civil law writers, the jus in re acquired under the repealed statute, and the jus ad rem so acquired. An actual redemption before the first of November, would have presented "an instance of the former; the mere right to redeem, is an instance of the latter. A right carried into judgment, or taking the form of an express executory contract under a repealed statute, might, perhaps, also stand on the same ground with the devise in Jenkins; and so of other rights having means of vitality independent of the statute. But where every thing depends on this, it seems to be equally a violation of principle as of authority to say, that any one of its provisions can be enforced or executed after it has been repealed by a general clause.
On the whole, we are of opinion, that the plaintiff’s title became absolute on the first of November, 1838. The verdict is, therefore, right
New trial denied.

 See the observations of Verplanck, senator, in Cochran v. Van Surlay, (20 Wendell, 365, 381, et seq.)