Mr. Justice Heydeneeldt
delivered the following 'dissenting opinion:
As this case is presented on the record, it is in effect a Bill in Chancery to enforce the specific performance of a contract for a sale of lands made by the Sheriff on execution.
It is true that it is brought in the name of The People upon the relation of the purchasers, and purports to [155] be an *application for the prerogative writ of mandamus, to compel the Sheriff to do a duty which it is alleged is enjoined on him by law. But it does not stop at this; it goes into a consideration of the time of the original contracts, and the rights of the parties under them, and propounds an investigation .into the title, of the City of San *156 Francisco, the defendant in execution, into tlie title of the Commissioners of the Funded Debt, as successors by conveyance of the city, and into the legality of the acts of various parties, who united to effect a redemption of the property sold.
It must therefore be considered a proceeding of that character, which its nature and subject matter combine to give it.
The main reliance of the complainants in this case is, that the Act of 1851, which provides for a redemption of real property sold under execution, as far as it operates on contracts made before the Act, is in violation of the provision of the Federal Constitution, which prohibits a State from passing any law which impairs the obligation of contracts.
The argument used, and which is borrowed from the cases of Bronson v. Kinzie, 1 How., and McCracken v. Hayward, 2 How., is, that the remedy for enforcing a contract which is in existence at the time of making the contract, is a part of the contract, and cannot be taken away without impairing the obligation of the contract.
At the outset of this case, it would be difficult to say how this question can be raised according to the facts presented by the record.
The allegation of the bill is, that the city was indebted between the 15th of April, 1850, and the 29th of April, 1851; during the first seven days of which, the common law, unaided by any statute, afforded the remedy, and there is nothing in the record to remove the inference that the contracts were made within that period.
This would seem to me conclusive against the complainants, but as I will notice it more fully hereafter, I will proceed to give my opinion upon the constitutional question, as if no such difficulty intervened.
* I will not endeavor to take away from the [156] opinions in the cases in 1 and 2 Howard, whatever of force was intended by the Judges who delivered them, upon the question now under review.
It is very certain that the Court was not unanimous: for in the first case is the dissenting opinion of Judge McLean, *157 and in the second, Judge Catron declines to give any opinion .on that point.
It is also certain that the decisions of both those cases might well have been made in the same way, without any reference to the constitutionality of the Illinois laws.
I. am, therefore, inclined strongly to the view, that what the Judges said upon that question, is extra judicial. Chief Justice Yaughn, in Bole v. Horton, thus speaks of such opinions:
“An extra judicial opinion, given in or out of Court, is no more than the prolatum, or saying of him who gives it, nor can be taken for his opinion, unless everything spoken at pleasure must pass as the speaker’s opinion. An opinion given in Court, if not necessary to the judgment given of record, but that it might have been as well given, if no such, or a contrary opinion, had been broached, is no judicial opinion, no more than a gratis dictum.'1'1 (Vaughn, 382.)
This is precisely true of the two cases referred to. The same judgment would have been given, if the Court had held the opposite doctrine on the constitutional question, and therefore, as far as that question is concerned, there is no judicial opinion, and upon it the Court should have been silent. Such was the course pursued by the same Court in the case of the Bank of the United States v. Halstead, (10 Wheaton), where the point certified was, whether a certain statute of Kentucky was repugnant to the Constitution of the United States. They there determined the case upon another question, and said: “This renders it unnecessary to inquire into the constitutionality of the law of Kentucky.”
The great mistake which has been made in many cases consists in connecting the idea of the obligation of a contract with that of the remedy to enforce it. The two, I apprehend, have abstractly nothing to do with each other.
There is a distinct meaning attached to each. The [157] one belongs to the * declaratory part of the law, which' establishes the rights of persons and things, the other to the remedial, which enforces the right or redresses the wrong.
*158 It is unnecessary here to go so far as to say that the legislative power may abolish or destroy remedies altogether, and yet such is the case in every statute of limitations, whereby it is said by law-writers, the right remains as before, but only the remedy is gone.
“The argument,” says Judge McLean, “in favor of the statute (of limitations) is, that it does not act upon the contract, but withdraws the remedy. Now, if this be a constitutional exercise of power by a State Legislature, surely the exercise of the lesser power, by modifying the remedy at discretion, must also be constitutional. Does not the greater power include the lesser? The power, whether exercised in passing a statute of limitations, or in modifying the laws in relation to judgments and executions, acts upon the remedy. In both instances the enactments constitute the laws of the forum, and in my judgment, they depend upon the same power over the remedy.”
The power of the Legislature, it has been decided by this Court, is only limited by express constitutional restrictions. (See Revenue Cases, ante, 46.)
Following this rule, I do not see what is to prevent it from limiting, modifying or delaying the remedy, even admitting the doctrine, that it cannot so alter the remedy as to impair the right.
And now I come to the question, whether by any rule of law, or by any rule of common sense, the Act of this State, which gives the right to sell lands under execution, and also provides for their redemption within six months, can possibly be obnoxious to the complaint that it violates the obligation of the contract.
It is said, if you admit the power to provide a redemption in six months, then it follows that the power exists to extend the time for ever. It is a sufficient answer to this, that every Act must be construed according to its own provisions, and their effects. So the question was asked in Bronson v. Kinzie: * “ Suppose the [158] Legislature shall repeal all remedy; is the contract not thereby impaired?” To which the dissenting Judge aptly replies: “This question maybe asked with no more pro *159 priety and effect than many others. May not a State fail to appoint judges, clerks and other officers essential to the administration of justice?”
• To recur to the statute under consideration: How is it that a right in the judgment debtor to redeem his land within sis months can injuriously affect the creditor ? The only answer given is, that the land will not fetch as much money. But suppose the land of the debtor is ten times the value of the debt to be made, is it presumable that the power of redemption will prevent its selling for the amount of the debt?
I know no doctrine of the law which assumes that every debtor, or any debtor, has only land enough to pay a particular debt, when sold absolutely. And it seems to me, if a creditor complains that a law impairs his right under a contract, he must show the.facts which go to prove the truth of his complaint. Would he be listened to in a Court of Justice when it appeared that, to satisfy a judgment of a few thousand dollars, he had levied upon property worth as many millions, and which, notwithstanding the right of redemption, would sell for greatly more than his debt? Under the law as it is, he can get his money; it is all he is entitled to; his contract, instead of being impaired, is fulfilled; he certainly cannot complain.
This view of the question, to say the least, must create a doubt as to whether in any case the law can impair the rights of creditors; and it is indisputable now that a law will not be declared invalid unless there is a clear and strong conviction of its repugnancy to the Constitution. (Fletcher v. Peck, 6 Cranch. 87.)
So I conceive whenever it is said that the remedy infringes upon the right, it cannot be reasoned so as to be shown under any general rule, but must depend for its truth upon the particular facts of each case for which this new doctrine is invoked. Nor do I consider it by any means certain that property would sell for less money because of the right to redeem; and this as a fact, in order to [159] allow it to affect the validity of the law, * ought to be affirmatively shown by the record. It is a fact which, the Court cannot judicially know; for although it may be said, that by the right of redemption there is still something left in the debtor, yet that something is so ideal and abstract, that it is impossible to affix to it any specific value, or, by any process of legal reasoning, to show how it detracts from the interest of the purchaser. The presumption of law is, that he buys the land at its value, and if it is redeemed he gets back his purchase money and interest. He incurs no loss; and it is therefore hard to say that he does not buy the whole.
But even if generally it were otherwise, yet under the liberal provisions of our statute in favor of the purchaser, I should come to the conclusion that such strong inducements are there held out, and such a premium offered, as would make the property bring fully as much money as if there was no provision for redemption.
The purchaser under this law is entitled to the rents and profits of the land, and upon a redemption is to receive in addition to his purchase money, eighteen per cent, thereupon, and all expenditures for taxes and assessments, and this whether the redemption takes place within one month or within six. Such an opportunity for favorable investment, in case a redemption should take place, I have never seen offered by any other law, and I cannot help thinking that instead of its being any detriment to the creditor, it is in direct aid of his remedy.
It was urged at the argument that there were here rapid fluctuations in the price of property; that the object of purchasers is speculation; that frequently-in a short time land doubles in value, and for that reason the right of redemption will prevent a beneficial sale.
But it is sufficient answer to this, that while the law tolerates and protects all contracts which are fairly made, it has no especial regard for what are called speculations, and will not bend its rules in consideration of their existence. It has but one basis to regulate its view of the acquisition of property, and that is the. “quid pro quo.” It assumes that upon a fair sale, property brings its value, and in no case, even of breach of covenant in the sale, will it let the [160]] *160 purchaser recover either * future speculative profits, or even the actual increase in the value of the land. He would be entitled simply to recover his purchase money and interest upon it.
The position I have taken upon the whole subject is fully sustained, notwithstanding the cases in 1 and 2 Howard, by the concurrent authority of every appellate Court before whom the same or an analogous question has been brought, as far as my investigation has enabled me to ascertain.
I do not think that the case of Quackenbush v. Danks, 1 Denio, can have any influence in this case. The facts are totally dissimilar; there the question was one of the total exemption of the debtor’s property, by which the creditor had no remedy whatever.
Now even the strongest advocates for the doctrine that the remedy is a stipulation of the contract, do not deny that the Legislature may modify the character and extent of the remedy, so long as a substantial remedy is in fact left. (8 Watts & Serg. 49.) And I cannot tell by what reasoning it can be shown that under the California statute a substantial remedy is not left.
But independent of the inapplicability of the case in 1 Denio, from dissimilarity in the facts, a substantial cloud rests upon its authority, because it was the opinion of an equally divided Court, and was afterwards disagreed to in the case of Vedder v. Alkenbrack, 6 Barb. 327; and the opposite doctrine upon the same state of facts is expressly held in the case of Rockwell v. Hubbell, 2 Doug. Mich.
Upon a statute similar in effect to the one under consideration, we have the opinions of the Supreme Courts of Pennsylvania, Alabama and Texas.
In Chadwick v. Moore, 8 Watts & Serg. 49, the statute which was attacked provides that at Sheriff’s sales, unless the real estate brought two-thirds of its appraised value, the sale should be deferred for a year. Oh. J, Gibson, in the opinion of the Court, which he delivered, reviews the cases in 1 and 2 Howard, and in the face of them affirms the validity of the Pennsylvania law. He says: “If regulation of the remedy were prohibited whenever it might affect *161 the fruition of the right in * any imaginable [161] degree, much wholesome legislation would be shut out.” And again: “To hold that a State Legislature is incompetent to relieve the public from the pressure of sudden distress by arresting a general sacrifice of property by the machinery of the law, would invalidate many statutes whose constitutionality has hitherto been unsuspected. ”
In the case of Iverson v. Shorter, 9 Ala., the law of that State provided for the redemption of the judgment debtor’s real estate within two years after the Sheriff’s sale. That Court also had before it the case of Bronson v. Kinzie, but it did not alter or affect their opinion in favor of the validity of the law. Judge Goldthwaite says:
“ Conceding that a judgment creditor, at the time of this enactment, had, by his active diligence, acquired a lien on the real estate of his debtor, this may be said to be entirely without his contract, and is' in no manner affected by it. The Legislature, as it seems to us, may modify, or even abolish all such laws, without in any manner impairing the obligation of the contract. The answer to the entire argument is, that the creditor has stipulated for no specific lien, and the only right under his contract is to have the same remedies as other creditors are entitled to by the general laws of the land. It might be contended with equal force that imprisonment for debt was contracted for, as that the right to sell the land of the debtor, was now a part of the contract.”
In the case of Catlin v. Munger, 1 Tex. 598, the law examined was one of appraisement, similar to the one in Pennsylvania. The result of its examination was the same, and its constitutionality was upheld, notwithstanding the cases of 1 and 2 How. (See also Evans v. Montgomery, 4 Watts & Sergeant.)
I come now to the review of a position taken in the argument, which, it seems to me, is difficult to treat as a separate proposition, because it is entirely involved in the constitutional objection already considered.
*162 The argument is, that although the law is not obnoxious to any provision of the Constitution, yet it cannot, [162] from its *character, be made to operate upon sales on those judgments, resulting from contracts made before its passage.
Now the language of the law is positive and plain, and is, therefore, not the subject of construction, for it has but one meaning.
It refers to “all sales,” and meaning what it says, it necessarily intends to be applied to all sales made after its passage. So that, as far as regards the very subject matter of the law, it is entirely prospective.
Why then shall an exception be made in favor of sales under judgments on prior contracts? The law itself makes no such exception. There is and can be but one answer, which is, that it impairs the obligation, and so we would be carried back, to travel again over the constitutional grounds.
In the New York Act of Exemption, which was denounced in the case of Danks v. Quackenbush, the language is simply, ‘' There shall be exempted, ” etc. Upon this, Judge Bronson says, “I will not deny that the general words in which the law is framed are broad enough to include contracts already in existence,” and he refuses to give it a retroactive operation, because he considers it in violation of the Constitution.
The same reason prevailed in Bronson v. Kinzie and McCracken v. Hayward; and, indeed, in every case which can be cited where the retrospective operation of a law is denied as against its plain intent, it has been upon the constitutional objection.
If that objection did not exist, no other-could. No one has denied the power of the Legislature to pass a retrospective law, and this Court, in the Bevenue Cases, at the last term, has conceded to the legislative department all power which is not expressly denied by the fundamental law.
Judge Story says: ‘‘ There are many laws of a retrospective character, which may yet be constitutionally passed *163 by the State Legislatures, however unjust, oppressive or impolitic they may be.” And again: “There is nothing in the Constitution of the United States which forbids a State Legislature from exercising judicial functions; nor from divesting rights *vested by law in an [163] individual: provided its effect be not to impair the obligation of a contract.”
The same argument was made in the Alabama case, which I have before cited. It was there urged, on the side impeaching the validity of the law, that it ought not to be applied to sales made under judgments, which had been rendered prior to the law, and for the reason, according to my personal recollection of the argument, that the judgment had already created a lien upon the whole property, and this entitled the creditor to have the sale absolute, and it was said' that the whole could not be sold so as to fulfil the obligation given by the lien, if the debtor could afterwards redeem. For there, as here, the complete right of redemption was tried to be distorted into an ideal estate. But the Court said: “There is no room to give this restriction, without departing from the very letter, which directs that all sales hereafter made” shall be governed by it. In New York these statutes are considered remedial, and as such, entitled to be construed in the most liberal manner, to advance the remedy. “With us, statutes giving a new remedy have frequently been construed to apply to suits then existing. And such is believed to be the general construction with respect to such statutes, unless the intention is apparent to restrict their operation.”
If, therefore, the constitutional objection is not relied on, there is no substance in the position just considered which can avail the complainants'.
But I will go a little farther into an examination of the claims of the parties to insist upon the right to have administered in their behalf a pre-existing remedial law.
The contract is alleged in the bill to have been made between the 15th of April, 1850, and the 29th April, 1851. During the first seven days of this time, the common law on the subject of remedies was alone in force; the Act to *164 Eegulate Proceedings in Civil Cases not having passed until April 22d.
The rule is familiar that all pleading must be taken most strongly against the pleader; or, in other words, he who asserts a right against another, must bring himself strictly, by his facts, within the rule of law which confers the right.
[164] *We are, therefore, bound to consider the complainants’ assertion of right in the most unfavorable view which their own allegations will admit, and consequently we are forced, for the purposes of this case, to assume that the contract was made within the first seven days of the period alleged, and if, as is insisted, the remedy is a stipulation of the contract, then they were alone entitled to remedies afforded by the common law.
The bill does not allege that the contracts were forming and continuing contracts, from the one period to the other, which, indeed, would be a solecism, but merely that, between the two days mentioned, the City of San Francisco was indebted, etc.
By the common law, lands were not subject to execution in any manner. It was not until the Stat. of Westminster 2, that the creditor was given the writ of elegit, and this only enabled him to obtain possession of one half of the debtor’s lands, for such time as would enable the profits of the land to pay the debt.
Blackstone says: “By the common law a man could only have satisfaction of goods, chattels, and the present profits of lands; but not the possession of the lands themselves. .No creditor could take the possession of lands, but only levy the growing profits; so that, if the defendant aliened his lands, the plaintiff was ousted of his remedy.” (3 Black. 418.)
The same doctrine will be seen to be maintained by Coke and other common law writers. Now if the strange doctrine is true, that the contract is made in reference to the remedy, then would the debtor here be enabled to assert, with reason, that her lands were not, in any wise, subject to the executions upon these contracts. But as I hold the doctrine to *165 be an absurdity of modern days, which is attempted to be engrafted upon the body of our jurisprudence, to its great disfigurement, I will not pursue the argument upon such an hypothesis.
The Civil Practice Act of April 22, 1850, gave the remedy of selling lands under execution. The following year, and before the alleged judgments were rendered, that Act was repealed, and the effect of the repeal is, to take away all right to proceed under it, even in regard to suits pending at the time of the repeal.
* In Butler v. Palmer, 1 Hill, 324, this question [165] came up. It was a case where a right of redemption had been given by a statute which was repealed, and another passed, shortening the time of redemption. Judge Cowen, who delivered the opinion, says, ‘ ‘ Independently of constitutional restraint, no approved writer can, I apprehend, be found, either on our own or the civil law, or the law of nature, who has denied die abstract power to repeal.” (See also the cases there cited: Dale v. The Governor, 3 Stew. 387; The People v. Livingston, 6 Wend. 526.)
In regard to the effect of the repeal, the doctrine I have here laid down is most amply sustained by the opinion from which I have already quoted, and by the large array of authorities, both English and American, which are there relied on. They may be all summed up in the language of Lord .Ch. J. Tindal, in Key & Goodwin, 4 Moore & Payne. He said, “ I take the effect of a repealing statute to be to obliterate it as completely from the records of Parliament as if it had never passed, and that it must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted and concluded whilst it was an existing law.”
And Dwarris, an English commentator on statutes, says, “When an Act of Parliament is repealed, it must be considered (except as to transactions past and closed) as if it had never existed.” (P. 276.)
Nor is there anything in the repealing clause of the Act of 1851 which saves the complainants. The only saving clause is in the following words: “But such repeal shall not in *166 validate any judgment rendered, or order made, or any proceeding already taken by virtue of said statutes. ” This, it will be seen, even allowing it a most liberal construction, only prevents tbe nullity of proceedings, under tbe former law, as far as they have gone, but makes no reservation, such as can enable them to go on any further under the old law. It is indeed a familiar clause, in repealing remedial statutes,' ahd its effect was fully considered in the case of The People v. Livingston, in 6 Wendell. There the repealing [166] clause of the New York law * was also much fuller, and more comprehensive in the terms of reservation which are employed.
It says: “The repeal by this Act shall not affect any act done, or right accrued or established, or any proceeding, suit, or prosecution had or commenced in any civil case previous to the time when such repeal shall take effect, but every such act, right and proceeding shall remain as valid and effectual as if the provision so repealed had remained in force.”
In construing the effect of this clause, Ch. J. Savage says: “In my opinion, the effect is, that every suit, right, etc. remains in force, notwithstanding the repeal of the Act which supported them; but their future proceedings must be governed by the statutes in force, i. e. the Revised Statutes.” And again: “It seems to me to have been the intention of the Legislature to confirm all rights which had accrued — to be enforced, however, according to the new remedy.” He afterwards quotes, with approbation, from the opinion in the case of The People v. Herkimer Com. Pl., 4 Wend. 210, where Mr. Justice Marey says: “ Those statutes take up the proceedings in causes pending, where they find them, and where the statutes under which those proceedings were commenced are repealed, the subsequent proceedings must be regulated by tha Revised Statutes.” And the Judge Adds: “They must be so regulated, because there is no authority to continue those proceedings under any other statutes.”
I have cited these authorities to show how devoid of reason and authority is the attempt of the complainants to hold that *167 the property they claimed was sold under a repealed statute. For this is the only position which, on their side, admits them to say anything, because, under the common law, they had no right to sell the land whatever; and the land was sold, subject to redemption, by the same Act which gives the power to sell. I might also add that, if this Act was not merely remedial, being in derogation of the common law, it must be construed strictly; therefore, taking away, as it does, the exemption at common law of the debtor’s lands, it must be rigidly construed, to secure whatever conditions are favorable to the debtor; for, if it gives the creditor a new right against the old law, he will * only [167] be allowed to take, stricti juris. Such, at least, would be the rule if, as the complainants insist, the statute affects the obligation of the contract, and not merely the remedy.
I now propose to examine whether, upon the supposition that the law is invalid because it impairs the obligation of the contract, the complainants will be allowed to set it up, so as to defeat the right of redemption. They are merely purchasers — but I will, for the sake of argument, suppose them to be subrogated to all the rights of the creditor.
The statute is a remedial one. If it is inapplicable to the contracts in question, then the parties to those contracts were entitled to some other remedy. Now it at once recurs to ask, did they pursue that other remedy ? or did they not act, or seem to act, under the remedy prescribed by the existing general law? For I hold it to be an admitted principle that every law is presumed to be valid until it is declared otherwise by competent authority; and the general transactions of all persons are presumed to be conducted with reference to it, unless express notice is given to the contrary.
This must be peculiarly the case where remedies are concerned. It will not do for a party to apparently pursue the remedy under the existing law, and then, by insisting upon a different one, to surprise and entrap his adversary. • This would truly be a specimen of sharp practice which the morality of the law will never tolerate. Nor is there to *168 sustain the complainants upon this point one solitary decision. Even in the cases so much relied on, of Bronson v. Kinzie and McCracken v. Hayward, the application was there made in advance for the remedy under the old law, which the parties claimed they were entitled to. And I do not think it would, for a moment, be maintained by the most fertile imagination, that if, in those cases, the sales had proceeded under the existing law, the purchaser would have been listened to, in asserting a title not subject to redemption, or to set aside the sale because of the appraisement, on the mere ground that the creditor was entitled to a remedy, which he had failed to pursue.
In Barnet v. Barbour, 1 Lit. 396, the same decision was made. The Court say: “We admit that an [168] individual whose rights * are prejudiced by the operation of a law conflicting with the Constitution, has a right to demand of the judiciary a decision on the validity of the law; but such individual ought to show that his constitutional rights were infringed without his consent, and ought not to jeopardize his rights voluntarily by attempting to proceed under a law, and to take the benefit of it so far as to delude others into the dilemma, and then turn round and complain of constitutional injuries.”
This was a case where the existing law required the land to be sold on a credit of one year, and the creditor was denied the right to raise the constitutional objection, because, by his agent, he had attended and bid at the sale. This was considered as a waiver of his right, as it evinced his intention of taking his remedy under the law.
To the same effect, precisely, are the following cases: The People v. Murray, 5 Hill, 468; Chitty v. Glen, 3 Monn. 424; Evans v. Montgomery, 4 Watts & Serg.; Willard v. Longstreet, 2 Doug. Mich. 172; Hansford v. Barbour, 3 A. K. Marshall, 515.
But reason and authority go beyond this. The purchaser is not subrogated to the rights of the creditor. He is not permitted to raise this question. No right of his is violated; no contract of his is impaired. The only contract which he has made is at the Sheriff’s sale. He is presumed *169 to look to the law as it exists in governing the purchase which he makes, and that law is emphatically the law of his contract. He has no interest or concern in having the creditor satisfied of his debt, and it is no business of his to meddle with the remedy which the creditor has adopted, whether it be unconstitutional, or operates retrospectively.
To permit such a thing would be a gross solecism in law and reason. In the case of Iverson v. Shorter, 9 Ala., the Court say: “We dismiss, then, the constitutional question, with the brief remark, that if the statute was open to objection on this score by a creditor, it would scarcely avail a purchaser, who takes all his rights by virtue of the specific legislation.”
So in the case of Evans v. Montgomery, 4 Watts & Serg., the Supreme Court of Pennsylvania say: “Montgomery, the purchaser, has no reasonable ground of complaint, because the *Act was passed several months [169] prior to his purchase, and therefore he is to be considered as well aware of it, and as buying under its authority, and subject to its provisions.”
So in the case of Rudd v. Schlatter, 1 Lit. 19. The Supreme Court of Kentucky say (after referring to a case in which they had just before decided that the judgment debtor could not make the objection under review:)
“ It is now to be decided, whether the purchaser can do it. It is stated in the case just cited, 'that the rights ot the creditor alone, if there is an injury, are injured by the provisions of the law as between him and the debtor, and we cannot see how the rights of the purchaser are made worse by the law, even admitting its repugnance to the Constitution. The purchaser has no interest in the question until he makes the purchase. The Constitution in this respect does not secure, nor does the law take away anything from him by indulging the debtor whose estate is sold. If that estate is sold for ready money, the purchaser knows it; if on a credit, he makes his contract accordingly, and must fulfil it; and ought not to be entitled to relief because the creditor, who holds the bond and asserts its validity, has *170 had his constitutional claims infringed. ” ( See also Russell v. Dudley, 3 Met. 147.
The next point I shall consider is, whether the redemption in this case was effectual under the law. And, first, as to the redemption by the Mayor of the city. My opinion as to the principles of law which settle this matter, makes it unnecessary for me to run into a commentary of any length. The objection made to it is, that it does not appear to have been made, or afterwards approved by the authority of the Common Council of the city by act, ordinance or resolution. The answer to this is free from any embarrassment. It is a familiar rule, that whatever is done for the benefit of a party is presumed to be done by his authority, or to have been immediately adopted. ( See Bailey v. Culverwell, 8 Barn. & C. 448; Camp v. Camp, 5 Conn. 291; Church v. Gilman, 15 Wend. 656; Jackson v. Bodle, 20 John. 184; Merrills v. Swift, 18 Conn. 257.)
The immediate influence of the action of the Mayor in redeeming this property, was its restoration to the [170] city. If it * was done by paying the money of the city, this would be conclusive proof of authority, because he is not the keeper of the exchequer, and could not obtain possession of it without her assent. If, on the other hand, it was a personal advance of his own money, as he could not create a legal obligation against the city for its repayment, it is a benefit so distinct and munificent, that her acceptance and adoption cannot be questioned. The presumption of law in cases of this kind, is founded upon beneficence and reason combined, and it will not be allowed to be overcome, except by the express declaration of the beneficiary to the contrary.
I see no reason why the full scope of this rule should not avail a municipal corporation as well as a natural person.
In addition, however, to this presumption, we have the fact, that the city, in two months after the redemption, comes into Court, and by her answer in this cause, affirms the Act, and claims all the benefits to be derived under it.
This is, in my opinion, a sufficient expression of assent, *171 even if any was required, which X do not believe, for in many of the reported cases assent is implied from acts partaking of the benefit, long after it was conferred.
Paley says: “As an authority may be presumed from previous employment in similar acts, so the same presumption arises from subsequent acts of assent or acquiescence; and a small matter will be evidence of such assent. ” (Paley on Agency, 171.)
Nor is there any pretense for the assertion that this acquiescence comes too late, when it appears for the first time, by the pleadings in a suit where it is the subject of the controversy.
In the case of Roe ex dem. The Dean and Chapter of Rochester v. Pierce, 2 Campbell, 96, it was held that the bringing of the ejectment was sufficient to show that the plaintiff had adopted the act of an agent who gave notice to quit, where there appeared no express authority for it.
So in Smith v. Hodson, 4 Term R. 211, a bankrupt, on the eve of his bankruptcy, sold goods to a creditor with a view to a fraudulent preference; but the assignees having brought an action of assumpsit, the form of the action was held to be an * affirmance of the sale, so as to [171] entitle the creditor to set off his debt.
And so it is in all such cases, for it is held that by the suit the party adopts the act, and it does not lie in the mouth of his adversary to say that the act relied on was without authority.
( See also Hagedorn v. Oliverson, 2 Maule & S. 485; Robinson v. Gleadow, 2 Bingh. N. C. 156,)
In the second place, what is the objection to the redemption as made by the Commissioners of the Funded Debt ? The allegations of the bill show that, previous to the recovery of the judgments under which the sale took place, the property in question, or a part of it (and which part is not distinguished), was conveyed by the city to the Ccjinuissioners of the Sinking Fund, and by authority of an Act of the Legislature, from the Commissioners of the Sinking Fund to the Commissioners of the Funded Debt.
*172 By the Act of the Legislature referred to in the bill, the Commissioners of the Sinking Fund are appointed and required to convey to the Commissioners of the Funded Debt all the property of the city, without any exception. So, if in the conveyance under the authority of the Act, any portion of the lands of the city were omitted, this cannot be set up to affect the substantial rights of the parties' in a court of equity.' I am not sure that the Act itself does not operate as a legislative conveyance even of the legal title; for there seems to me to have been no necessity for the conveyance directed by the Act, except for the mere purpose of conformity. But be this as it may, if there are omissions in the deed, a Court of Chancery would reform it so as to carry out the- directions of the Legislature; and without this, in deciding upon the rights of parties, it will apply its own maxim, and consider that as done which ought to be done.
It follows, necessarily, from this view, that the Commissioners of the Funded Debt had the legal or equitable title to all of the lands in controversy, before the judgments and sales under which the complainants claim, and therefore they were the successors in interest of the city.
[172] *It is alleged in the bill that the conveyance to them was fraudulent and void as to third persons; but this is neither shown by the evidence nor found by the Court. It seems to depend upon a naked allegation that it was so decided in some other case. No such point was made in the argument, because, as I suppose, its futility was too apparent. I only mention it here tó • show that it has not escaped my attention.
The only argument which seems to be relie'd on against the validity of the redemption made by the Commissioners is, that it appears from the finding that only two of the Commissioners participated in the act of redemption, whereas it is said it should have been the act of the whole Board. But there is no room for such an objection upon the face of the record, and the complainants are estopped from it by. the pleadings.
The bill alleges the redemption to have been made by the *173 Commissioners of the Funded Debt, eo nomine, It makes them all parties, and they come in and answer, admitting the act, as alleged, to be their act. No such issue was made. If it had, doubtless the proof would have been procured to show that the two Commissioners acted by authority of the whole Board.
It is again objected that a gross sum was paid to the Sheriff, and it is insisted that he should have been paid the amounts separately belonging to each purchaser.
With this, I will also consider the objection, that no money was offered as interest upon taxes and assessments. I consider both objections as technical and trivial. The Sheriff is the officer to whom the money must be paid. He is the agent of both parties, and he has the information upon his books by which he can ascertain, with accuracy, the sums respectively due. The object of the law is simply that the purchasers shall receive the money, and if enough is paid to the Sheriff, in gross, to carry out this object, it is immaterial, as far as the rights of the defendant in execution are concerned, what disposition is made of it. From the time of the receipt of the money by the officer, he is liable to the parties entitled to it.
If there had been any taxes or assessments, it ought to have been shown; in other words, the payment should have been ^proved to have been insufficient [173] to satisfy the provisions of the law, and this alone could have defeated the redemption.
I have now finished what I had to say about the merits of this cause. Because the majority of the Court have come to a conclusion widely different from mine, I have, contrary to my usual custom, discussed this case at great length, and have carefully examined every question which was seriously urged upon the argument.
Although I deeply regret this difference of opinion, yet, after the most mature reflection and study, I can see no reason which can possibly operate to procure my concurrence in the conclusions of my associates, and I have only to add that I dissent totally therefrom.